STATE TREASURER *v.* LUTHER CROSS & IRA DAY.

Washington,
March,
1837.

A subscription, by which the subscribers individually promise to pay the Treasurer of the State the sums annexed to their names, toward building a State House, is not void for want of consideration, or as against public policy.

A suit may be brought on such paper, in the name of the Treasurer.

It is no defence, in an action on such paper, that the whole sum subscribed exceeded the amount to be raised, but the subscription should abate *pro rata.*

This was an action of assumpsit upon a subscription paper, for the purpose of building a new State-house in the town of Montpelier. The general issue was pleaded and joined to the court.

The plaintiff, to support the issue on his part, introduced testimony to show that the State-house, heretofore occupied in the town of Montpelier, was in a dilapidated condition. That, at the session of the legislature, in 1831, a resolution was passed, appointing a committee to receive proposals for building a new State-house. The plaintiff also introduced the subscription paper, which is signed, among others, in the name of Luther Cross & Co. and the sum of $1000, annexed to said name, and also introduced testimony to show that Luther Cross signed the said paper, in the name of said firm, and affixed said sum thereto, and that he had authority from said Ira Day, his partner in trade, under said firm, for so doing, and that said Cross & Day jointly paid $490, towards the first instalment, on said paper. The plaintiff also introduced an act entitled " an act authorizing the building of a State-house in Montpelier," passed Nov. 8, 1832, the first section of which appropriated the sum of $15000, " for the purpose of erecting a new State-house at " Montpelier, *provided,* the inhabitants of Montpelier, or any " individuals, shall, before the first day of January, 1833, give " good and sufficient security to the treasurer of this State, to " pay into the treasury of the State the sum of $15,000."

It was also shown that, pursuant to the provisions of said act, a committee of signers to said subscription paper gave security to the State Treasurer, that the amount of $15000 should be paid into the State treasury, to be expended in erecting a new State-house—and that the State had caused to be erected, in Montpelier, a durable State-house, at an expense of about $100,-

Washington,
March,
1837.

State
Treasurer
v.
Cross & Day.

000—and that the defendants had refused to pay the balance of their said subscription.

The defendants, to support the issue on their part, introduced evidence to show that said committee of subscribers, on or about the 8th day of November, 1834, paid to the plaintiff the balance, that then remained unpaid, of said sum of $15,000, in discharge of the security said committe had given, as aforesaid,— that about $16,000, of available subscriptions, were contained in the paper signed by the defendants, including the defendants' subscription, and that, since the payment made by the said committee, as aforesaid, enough had been collected of the subscribers, other than the defendants, to re-pay the sum paid out by said committee, and leave an excess of three or four hundred dollars.

The plaintiff, to rebut the defence set up by the defendants, proved that the condition, on which each subscription was made, was, that the agents for procuring the subscriptions should procure as much subscribed as they could, and that each subscriber should be entitled to receive back his ratable proportion of whatever excess should finally be realized, over said sum of $15,000, and that the said subscribers are now prosecuting this suit for their own benefit, with the consent of the said State Treasurer. Upon these facts, the court rendered judgment for the plaintiff, for the balance of the defendants' subscription, deducting their proportion of the excess of the available subscriptions. To which decision the defendants excepted, and the case comes here for the revision of this court.

*L. B. Peck, for defendants.*

1. There is no sufficient consideration for the defendants' promise; it is a mere *nudum pactum*. *Essex Turnpike Co.* v. *Collins*, 8 Mass. Rep. 292. *New Bedford Turnpike Co. v. Adams*, id. 138. *Philips' Limerick Academy* v. *Davis*, 11 id. 113. Com. Dig. Tit. action upon the case upon assumpsit. F. 8.

2. The subscription ought not to be supported. It was no less than purchasing of the legislature the location of the State-house. It was holding out to that body a pecuniary consideration for the passage of a law on a subject, in which all the inhabitants of the State were equally interested. Public policy would seem to be opposed to the legality of such a contract. Had an individual promised another that he would pay him any

Washington,
March,
1837.

State
Treasurer
v.
Cross & Day.

given sum, provided he would procure the passage of a law, locating the State-house at this place, such promise would be *void*, and no court would enforce it. To this point it must be unnecessary to cite authorities. Ought not this principle to apply, when the contract is made with the government itself? And from what source, it may be asked, does the government derive the power of making such a contract?

3. This suit could not be sustained in the name of the Treasurer, if the money, when collected, belonged to the State. The Treasurer is a mere agent, and the suit should have been brought in the name of the State. Our statute, authorizing certain suits to be brought in the name of the Treasurer, cannot be extended to this case. It is not a debt due the State, within the meaning of that statute. 1 D. Chip. Rep. 295, 431. 9 Conn. Rep. 267. 1 Mass. Rep. 208. 6 id. 253. 9 id. 272. 10 Johns. Rep. 387. 1 T. Rep. 172, 674. 3 B. & P. 147. 3 B. & B. 275.

4. This suit was avowedly brought for the benefit of the other subscribers, to compel a contribution from the defendants. It cannot be sustained for this purpose. If they have any remedy, it must be sought in some other form of action. *George et al.* v. *Harris*, 4 N. H. Rep. 538.

*O. H. Smith, for plaintiff.*

By the 18th section of the act, (Comp. laws, p. 552,) it is provided that all suits are to be prosecuted " in the name of the people of the State of Vermont, or *in the name of the treasurer thereof.*" The argument that the contract, contained in the subscription paper and signed by the defendants, should not be enforced, for the reason that it is against public policy, is too fine-spun to merit much consideration. By the erection of such a new State-house, as was contemplated in the contract entered into with the State, by the defendants and others, the seat of government would be permanently established in Montpelier, and the interest of those, residing or owning real estate in the immediate vicinity, would be greatly advanced, by a rise in the value of their property, while those, living more remote, would derive no benefit whatever. Would it be just to say that those, living in the immediate vicinity, should pay no more than those living in the remotest part of the State? If, in justice, those, who derive an essential benefit, should pay more, it would be difficult to point out wherein the impolicy consists, in enforcing

Washington,
March,
1837.

State
Treasurer
v.
Cross & Day.
an agreement, by which they voluntarily contracted to pay more. Until the defendants can show that it was unjust to establish the seat of government permanently at Montpelier, by the erection of a durable building for a State-house, we shall take it for granted, that sound policy requires that the present contract should be enforced, as it is just and equitable, and was entered into voluntarily, for a valuable consideration.

The main question, in the case, is, whether the payment, made by the committee in discharge of *the security* they had given the Treasurer, can enure to the benefit of the defendants, and operate as a payment of their subscription, so as to drive the subscribers to bring their separate actions for a contribution.

It is a well settled principle, that the surety, on paying the debt of the principal, is entitled to be put in the place of the creditor, and may avail himself of all, or any of the collateral securities, means or remedies, which the creditor has for enforcing payment against the principal, and may have them assigned to him. 4 Vt. Rep. 599. 4 Johns. Ch. Rep. 130. 10 Johns. Rep. 524.

It was determined in the case of *Allen* v. *Holden,* 9 Mass. Rep. 133, that a judgment is not discharged by payment of the amount of it, by the officer, who has become liable to the creditor, in consequence of his neglect to serve the execution, but an action may, afterwards, be maintained upon the judgment, with the creditor's consent, for the benefit of the officer. Although no case has been reported in this State, which adopts the law in this case, still it is well understood to have been sanctioned by repeated decisions in the county court.

If three persons own goods jointly, and agree to an auction sale, upon credit, with notes payable to bearer, and agree that a disinterested person shall be the bearer and collect and pay over, and one of the owners becomes a purchaser and gives such a note, the person agreed upon as bearer can recover at law, in a suit on the note, for the reason that, by the agreement, the legal interest and right to recover the money is vested in him, and when collected he will hold it in trust. *Smith* v. *Burton,* 3 Vt Rep. 233. *VanNess* v. *Foust,* 8 Cranch. 30.

The opinion of the court was delivered by

WILLIAMS, Ch. J. This is an action brought to recover the sum, subscribed by the defendants, towards building a state-house in Montpelier. The subscription paper contained a contract be-

Washington,
March,
1837.

State
Treasurer
o.
Cross & Day

tween the state and the individual subscribers, and, if liable to none of the objections, which have been urged, must be enforced. Here were parties *in esse*, capable of contracting. If the subscription was made before the passing of the act of the legislature in 1832, it was in the nature of a proposition to the state, that the several subscribers would pay the several sums annexed to their names, if the state house-should be erected in Montpelier. If made after the passing of the act, it may be considered as accepting the proposition, emanating from the legislature, in the providing clause of the first section of the act, and providing the funds for that purpose. In either event, when the terms of the act were complied with, the contract between the state and the subscribers was mutual and equally binding. From the decision of the court in the case of the *University of Vermont* v. *Buell*, 2 Vt. Rep. 48, it appears that such contracts are not void, for want of a consideration; and it is to be observed that all the cases from Massachusetts, which the defendants have read, were before the court on the hearing of the case against Buell.

Of the propriety of a contract of this kind, between the state and individuals, it does not become us either to inquire, or express an opinion. The doings of the legislature, when not liable to constitutional objections, are to be respected by the other branches of the government, and their wisdom or propriety are not to be questioned by a co-ordinate branch. The propriety of any particular location of public buildings may depend, in some measure, upon the sum proposed to be given by the citizens of any place. The public interest obviously requires that such location should be made with a view to all the circumstances, and the greater or less burthen to the whole State would be an important circumstance to be taken into consideration, in determining between several places, in other respects equally convenient. The increased value of the property, in the vicinity of public buildings, would seem to require that those, who are benefitted, should contribute some part of this increase, for the purpose of erecting them, rather than that the whole advantage should accrue to them, and the expense be wholly borne by the citizens generally. We can see no foundation for the objection made to this subscription, on the ground of public policy or propriety.

That the action may be brought in the name of the Treasurer, appears from the 18th and 19th section of the statute constituting the treasury department. It is a suit for money due on

Washington,
March,
. 1837.

State
Treasurer
v.
Cross & Day

simple contract, and, by that statute, may be brought either in the name of the people of the State, or in the name of the treasurer.

It only remains to consider the defence relied on by the defendants; and we are of opinion, that it cannot avail them, either that the committee of the subscribers paid to the State the whole sum of fifteen thousand dollars, which they had secured, or that the sum, collected by the committee of the other subscribers, was sufficient to repay the sum by them actually paid over. The payment made by the committee was not a payment made by the individual subscribers. The claims of the State may have been satisfied by the payment of the bond, but the subscription was, both before and after that payment, held by the committee, as in trust for the benefit of the signers of the bond. The cases are numerous, where a debt or claim has been paid to the creditors, and the securities kept alive for the benefit of others interested, and suits have been maintained on those securities. If a judgment is rendered against a sheriff for an escape, the judgment against the debtor is frequently, by order of court, assigned to the sheriff. *Oliver* v. *Chamberlain*, D. Chip. Rep. 41. The principle was recognized in the case of *Allen* v. *Holden*, 9 Mass. Rep. 133. Further, from the nature of the subscription it is very apparent, that the defendants could not resist the action, on the ground that the committee had already collected of the subscribers the whole sum, for which the bond was executed. Each subscriber agreed to pay a definite sum, and if the aggregate exceeded the amount required, the subscriptions should abate, *pro rata*, and no one subscriber could have the whole benefit of the excess. The agreement among the subscribers, to this effect, was only what the law would have enforced without such agreement, in case the subscriptions exceeded the amount required. The result is, there is no legal objection to the right of the plaintiff to recover of the defendants on the subscription paper, after deducting their proportion of the excess of the available subscriptions, either arising on the contract itself, or on the facts given in evidence by the defendants; and the judgment of the county court, which was conformable to this view, must be affirmed.