## John M. Brackett v. William S. Sears and others.

*Mortgage, when security for advances. Commissions: Accounts current. Professional services, where several suits depend upon trial of one: Equitable set off.* S. made a mortgage to J. S. and W. P. L. for $15,000, for which they gave their receipt which concluded as follows: "*from which we are to deduct our account with him, and to pay him the balance, or to be returned to him at our option.*" That account was a balance due upon mutual accommodation discounts and acceptances, or indorsements. The parties subsequently pursued a similar course of business accommodations; the balance of advances being always against S. but never equalling the face of the mortgage and interest.

*Held*, that the mortgage should be considered as security for all such dealings and advances.

*Held*, further that no commissions could be allowed to the mortgagees on their discounts or advances so long as the account in their favor did not suffice to pay the amount of the mortgage; and that the security could only cover the sums actually remaining due, excluding such commissions.

*Held*, further, that from the nature of the dealings between the parties and the course of their accounts their mutual dealings were evidently considered as dependent, and, therefore, the professional charges of S. should be regarded as equitable set-offs in the accounting on the mortgage; and that where it was assigned to secure a sum less than the whole amount due, with a residuary interest in the mortgagees, such services subsequent to the assignment might also be set-off upon such residuary interest. But accounts for services rendered, not to the firm, but to the individual partners or to third persons could not be set-off against the firm unless by some valid agreement the firm had made itself liable for them. .

Professional charges will not be rejected merely for want of success in the litigation, where there is no clear proof of mismanagement. But where several suits were made to depend on the argument of one, the charges should not be multiplied at the full rate as if there had been separate hearings in each, but should be confined to such services as were actually rendered.

*Heard November 3d*, 1866. *Decided January 14th*, 1867.

Appeal in Chancery from Wayne Circuit.

The bill in this case was filed to foreclose a mortgage made by William Sears and wife to James S. and William Libby, and by them assigned to the complainant to secure a debt.

The cause was heard on pleadings and proofs, and a decree was entered for the sale of the mortgaged premises in default of the payment of $15,168.25 and costs of suit.

The defendant, William S., appealed from said decree. The facts are stated in the opinion.

*R. P. Toms*, for complainant.

*T. Romeyn*, for Wm. S. and C. E. Sears.

*D. C. Holbrook*, for J. S. and W. P. Libby.

CAMPBELL J.

This is a bill to foreclose a mortgage given by William S. Sears and wife to James S. Libby and William P. Libby, and by them assigned to complainant to secure a debt. The mortgage was dated August 17th, 1858, and was given

·to secure a bond for $15,000 in the penalty of $30,000. At the time these securities were given no money was advanced, and Sears owed the Libbys a much smaller sum. Upon delivering them to the mortgagees, the latter gave back a receipt for the papers, which described them and then concluded as follows: "*From which we are to deduct our account with him, and to pay him the balance, or to be returned to him at our option.*"

There had been many previous dealings by way of mutual accommodation by indorsements and discounts and money advances, which had been settled by striking a balance and taking notes from Sears in November, 1857. Between that time and the date of the securities further dealings had enlarged the balance against Sears, and there was some outstanding paper of his on which the mortgagees were liable, but not enough, with the debt, to reach the sum secured by mortgage. These dealings continued, and in March, 1861, when the papers were assigned to complainant to secure a debt of about $11,000, the balance was much larger than this last sum, unless reduced by some claims now in dispute. There is some conflict of testimony as to whether Sears was immediately informed of this assignment. The question does not become very material, but we are inclined to think he was so notified or informed.

The contest in this case arises on several points which will be noticed in their proper order.

First, it is claimed that the papers were made for the sole purpose of being discounted, and that the mortgagees could not hold them for any other purpose, or to secure future advances.

It is further claimed that set-offs due Sears have been disallowed, and that claims have been allowed in favor of the mortgagees which were not proper charges.

It is very evident from the testimony that it was expected that the mortgagees would get it cashed if possible,

and pay over the balance to Sears after retaining what was due themselves; and we think this the real reason why the bond was originally designed to bear ten per cent. interest—the correction to seven per cent. being out of doubt as to the legality of the larger rate. But the receipt does not make the delivery conditional. It authorizes the mortgagees to return the papers at their option, but its purport is to make them the property of the mortgagees, who were to pay for them, whether discounted or not, after deducting their account. No time was fixed for this payment, and no doubt Sears could after any reasonable time have tendered the balance of account, and demanded back the mortgage. But instead of doing this he obtained further discounts and advances, which would certainly be applicable as far they went, in reduction of the purchase money. And, as such a mortgage could only be enforced to the extent of money actually advanced, or indebtedness actually existing, the effect of the entire transaction was in law substantially the same as if the mortgage had been given in fact to secure future and present liability.

We are, therefore, to determine what was the state of the accounts between the parties. The advances and payments made by the Libbys are not in any way put in doubt, but the chief conflict arises upon the rejection of certain items claimed by Sears. The dealings of the parties were evidently based on a reliance that all of their accounts should be connected and dependent. We have no doubt that their dealings, pecuniary and professional, are within the laws applicable to equitable set-off. And we are compelled, therefore, to adjust the accounts on this basis.

Sears produces several checks, which he claims were made by way of advances to the Libbys, but which they have not credited him. The checks themselves are no evidence, one way or the other, of the fact that they were

given for or without an immediate equivalent.  If given in exchange for cash or other securities they would not of course be credited.  But if lent, then they should be credited on account as advances.  The mortgagees produce in turn a large amount of paper, which would apparently be chargeable against Sears, but which they do not claim to be due; and they say that these checks and the paper in their hands were exchange items, so far as they ever had them, and never went into account, because received and given for an immediate equivalent.  Upon a careful consideration of the whole case we think the accounts kept by the Libbys are correct.  Sears has not produced any satisfactory proofs to counterbalance the circumstances against him, and upon the documents alone, without the admissions of complainant and the Libbys, the balance against him would be much larger.  We, therefore, reject these disputed items—regarding the finding in the Circuit Court as correct.

The next set of items embrace the professional account of Sears.  He claims payment for his services as counsel in several suits before and since the settlement of November, 1857.  The previous services were not rendered to the firm of J. S. and W. P. Libby, but a part to J. S. Libby, and a part to Joshua F. Bridge and Samuel J. Bridge. We find no sufficient proof of any agreement by the firm to pay these claims, if they were not—as seems probable— included in the settlement.  Nothing but a distinct agreement, upon a valid consideration, could raise a legal liability to pay such debts.  The same remarks will apply to the charges for services subsequently rendered, not to the firm, but to individual partners or to other persons. And as there is no sufficient and clear proof of any such liability—while the mutual relations of the parties may have given some reason for expecting such allowance, we can not create a debt out of such premises.

From a computation it would appear that the commissioner allowed all of complainant's charges against the firm at the sums claimed, except in relation to seven foreclosure suits in favor of David Gould, and three suits in ejectment. It appears that in both of these instances the cases were dependent by agreement upon one hearing. This being so there was no propriety in allowing each to be charged for as a separate suit fully argued. If each suit argued was worth $300, as charged, we think the extra sum of $50 for completing the business in the other cases dependent on it was, so far as the testimony shows, a sufficient compensation. In the absence of proof that the business involved extra trouble, we are not disposed to change the allowance. We do not consider the testimony concerning the alleged mismanagement of the suits, as the counsel employed — who were better acquainted with them than the parties — have not shown any plain case of misconduct or unmistakable fault.

The Libbys, who appeal from the decree allowing these items, insist not only on their being excessive, but also that they refer to services subsequent to the assignment of the mortgage. As the assignment was by way of security, and the allowance of these claims leaves enough to pay the complainant in full, we think the balance in his hands as trustee for the Libbys or their assigns was properly subject to these set-offs, which are within the rule of equitable set-offs, and should be governed by the principles applicable thereto. The Libbys were equitable owners of the surplus interest in the mortgage after, as well as before, the assignment, and it should be subject to these accounts which do not seem to have changed their character as mutual dealings.

The only remaining question is concerning the allowance of a commission of one thousand dollars to the Libbys for their trouble.

The charge of such a commission can not be maintained

15 MICH. — R.

unless upon some understanding between the parties, as it is very clear that this is not a case of ordinary brokerage. Each party was in the habit of freely endorsing for the other, and of exchanging paper. And in relation to a very large portion—if not all—of the charges for money, the Libbys appear to have been lenders and not brokers.

Sears swears positively that there was no agreement or understanding of the kind. The only one set up was in relation to the specific sum of $1,000, which William P. Libby swears he proposed to Sears soon after the settlement in 1857, which he says Sears thought rather high but not unreasonable. It is somewhat difficult to understand how this can be possible. At that time there had been no considerable amount of business since the settlement. If it related to business done before, then it is very singular it was not mentioned during that settlement. But Libby swears that all previous services were settled by Sears giving up his accounts against the Bridges and Libbys for anterior professional services. It could not have related to the future, because the business could not be calculated, and indeed they claim full additional commissions at the rate of five per cent. This sum was never entered upon the books, which contain none of the charges for commissions, and no account was ever rendered to Sears containing any such items. Whether proper or improper, we can not but regard this charge as an afterthought. Nor do we think it admissible. The balance of advances between Sears and the Libbys never approached the amount of the bond and mortgage. Under the terms of their receipt they had bound themselves to pay for the mortgage unless they saw fit to return it, and could not charge for such moneys; and we can not believe that it could have been supposed by any of the parties occupying these very peculiar mutual relations that such a one-sided arrangement existed as is now relied on. We think the commissions charged and allowed in favor of the Libbys should be struck out. The

decree in other respects should be affirmed.   As the contest in this respect does not concern the complainant individually, the costs of this court should be taxed against the Libbys in favor of Sears, and deducted from the balance due after satisfying the debt to secure which the mortgage was assigned to complainant.

· The decree of this court will be entered on these principles.

The other Justices concurred.