Mar. 21,
1876.} ASHUELOT BOOT & SHOE CO. *v.* HOIT.

*Agreement— Consideration—Subscription for stock— Voluntary corporation.*

Certain persons signed an agreement to take and pay for the number of shares set against their respective names in the capital stock of a corporation, to be thereafter organized under the provisions of the General. Statutes, for the purpose of carrying on certain manufacturing business, upon conditions therein specified. *Held*, that said agreement was binding upon the subscribers ;—*held*, also, that said agreement constituted a good consideration for a promise on the part of third persons to pay in money toward the purpose contemplated in the agreement ;—*held*, also, that the corporation, when organized, could maintain a suit against a delinquent subscriber to enforce the collection of his subscription.

FROM CHESHIRE CIRCUIT COURT.

ASSUMPSIT. Tried before LADD, J., and a jury. Plea, the general issue. The declaration is as follows :

"For that the said defendants, at said Keene, heretofore, to wit, on the twentieth day of April, A. D. 1871, in consideration that the said plaintiffs would organize and form under the General Statutes of New Hampshire a corporation for the purpose of manufacturing boots and shoes in the town of Keene aforesaid, with a paid up capital of not less than fifty thousand dollars divided into shares of one hundred dollars each, and that one T. H. Leverett would, in addition to his subscription to said capital stock, convey to said corporation one acre of land on his farm in said Keene for the purpose of establishing their manufactory thereon, and open a street from School street in said Keene to an intersection with a contemplated street to be opened by Faulkner & Colony, running northerly from Castle street in said Keene, promised the said plaintiffs that whenever said corporation should be organized and formed as aforesaid, and said acre of land should have been conveyed by said Leverett as aforesaid, and said new street extending from said School street to said contemplated street opened by him, they would pay to said plaintiffs the sum of one thousand dollars ; and the plaintiffs aver that, relying upon said promise of said defendants, they immediately thereafter organized and formed under said General Statutes a corporation for the purposes aforesaid, with a paid up capital of fifty thousand dollars, divided into shares of one hundred dollars each ; that they induced said Leverett to convey, and he did then and there convey, to them one acre of land on his said farm, for the purpose of establishing their said manufactory thereon ; that the said plaintiffs have since erected on said acre a manufactory for boots and shoes, and have manufactured and still manufacture

therein boots and shoes in large quantities; and that the said Leverett has opened said street from School street to the street leading north from said Castle street, which said Faulkner & Colony contemplated opening, and which they have since opened;—yet said defendants, regardless of their promise aforesaid, have never paid said sum of one thousand dollars, or any part thereof. Also, for that the said defendants, at said Keene, heretofore, to wit, on the twentieth day of April, A. D. 1871, in consideration that plaintiffs, at their request, had organized and formed under the General Statutes of this state a corporation for the purpose of manufacturing boots and shoes in said town of Keene, with a capital paid in of fifty thousand dollars, divided into shares of one hundred dollars each, and that one T. H. Leverett had conveyed to said corporation, at their request, one acre of land on his farm in said Keene for the purpose of establishing their manufactory thereon, and had opened a street from School street in said Keene to an intersection with a contemplated street opened by Faulkner & Colony, running northerly from Castle street in said Keene, promised said plaintiffs that they would pay to them the sum of one thousand dollars on demand;—yet, though often thereto requested, said defendants have never paid the same, nor any part thereof."

In support of this declaration the plaintiffs offered the following paper, which the court *pro forma* admitted, and the defendants excepted:

"The undersigned mutually agree that they will take and pay for the number of shares set against their respective names in the capital stock of a corporation to be organized under the General Statutes of New Hampshire for the purpose of manufacturing boots and shoes in the town of Keene in said state, upon the following terms and conditions, viz.: Not less than fifty thousand dollars, payable in cash, shall be actually subscribed before any portion of the sums herein subscribed shall be payable. Said capital stock is to be divided into shares of one hundred dollars each. T. H. Leverett, in addition to his subscription hereto, is to convey to said corporation one acre of land on his farm in said Keene for the purpose of establishing their manufactory thereon, and to open a street from School street to an intersection with a contemplated street to be opened by Faulkner & Colony, running northerly from Castle street. April 20, 1871."

This paper was signed by nineteen individuals and firms, who took in the aggregate the required number of five hundred shares. Immediately following the names of the subscribers for stock is the following:

"We, the undersigned, agree to pay, in cash, a gratuity of one thousand dollars.         HOIT & COLONY."

Articles of association were duly filed in the office of the secretary of state and the town-clerk's office of Keene, agreeably to the statute, and no question was made but that the conditions of the subscription were fulfilled, except that it appeared that a small portion of one or two subscriptions for stock was paid in labor instead of cash. The court ruled that, if any part was paid in labor which was accepted by the corporation in lieu of cash, it would be the same as though it had been

paid in cash and the cash expended for labor. To this ruling the defendants excepted.

The defendants moved for a nonsuit, upon the following grounds : (1) That the first count in the declaration alleges that the consideration was in part received from the plaintiffs, and that the promise of the defendants was made to the plaintiffs ; whereas the declaration itself shows, and the evidence proves, that the plaintiffs were not in existence as a legal person, capable of making contracts and bringing suits when the contract set forth in the declaration was made ; but, on the contrary, the evidence proves that the consideration, in fact, emanated from other persons, and the promise was made to said persons, and therefore was not a contract made by the plaintiffs and the defendants, as alleged in the declaration ; (2) that the second count alleges that the acts constituting the consideration of the promise of the defendants were done by the plaintiffs at the request of the defendants, and that the promise was made to the plaintiffs ; whereas the said count shows, and the evidence proves, that the plaintiffs could not have been in existence as a legal person when said acts were done, and said request and promise were made ; but, on the contrary, the evidence proves that said acts were done, if done at all, by other persons not parties to this action, and said promise made, if made at all, by the defendants, to other persons not parties to this suit, and before the existence of the plaintiffs as a legal person, competent to make contracts and bring suits. (3) The third count in the declaration, being for general assumpsit, and based upon the facts alleged in the two first counts, stands or falls with them ; (4) that the agreement on which the plaintiffs rely to sustain this action, sets forth that the sum of $1,000, to be paid by the defendants, was to be given as a gratuity, and inasmuch as a gratuity excludes the idea of a legal consideration for the promise made by the defendants, and implies simply a gift, the promise is without consideration, and the defendants are not bound by it: it is a mere *nudum pactum ;* (5) that the agreement offered in evidence by the plaintiffs to support this action neither sets forth a consideration, nor names any person or persons to whom the promise was made nor to whom the money was to be paid, and therefore is insufficient in law to bind the defendants ; (6) that the plaintiffs have not proved the consideration alleged, which is a condition precedent to the promise.

This motion was overruled *pro forma*, and the defendants excepted.

It appeared on the trial of said action that the defendant Hoit signed the firm name of Hoit & Colony to the said written agreement or promise to pay a gratuity of $1,000, offered in evidence by the plaintiffs, before the articles of association filed in the offices of the secretary of state and town-clerk, also offered in evidence by the plaintiffs, were signed by the parties thereto, and before the plaintiffs became in fact a legal corporation. The defendants were not subscribers for the capital stock of said corporation, nor any part thereof, nor did they take any stock after said corporation was formed.

The defendants contended that their signature to the paper was

obtained by fraud; and that question was submitted to the jury, who returned a verdict for the plaintiffs, which the defendants moved to set aside.

The questions raised by the foregoing case were transferred to this court for determination.

*Burke*, for the defendants.

I. The allegation in the first count of the declaration is, that the plaintiffs should organize, &c., with a "paid up" capital of $50,000. The agreement offered in evidence to support that count sets forth that said capital was to be "payable in cash;" but it further appeared in evidence, that a portion of two subscriptions to the capital stock was paid in labor instead of cash, which the court ruled was a sufficient payment of the subscriptions if the corporation accepted the labor in the place of cash. The defendants contend that the ruling was erroneous. If a portion of the subscriptions could have been paid in labor, or materials, all could be so paid, which was not the true meaning of the contract. It would be favoritism to some of the subscribers, and would open the door to injustice toward others. The entire consideration must be proved as alleged. 1 Gr. Ev., secs. 65, 66, 67; 2 *ib.*, sec. 105.

II. The motion for a nonsuit should have been allowed for the reasons set forth in the two first grounds of the motion. The plaintiff corporation was not in existence as a legal person when the consideration alleged in the two first counts of the declaration originated, nor when the alleged promise was made, as the declaration itself shows and the evidence conclusively proved. No consideration could emanate from the plaintiffs, nor any promise be made to the plaintiffs, before they came into being as a legal person. Of course there could be no privity of contract between the plaintiffs and the defendants, no *aggregatio mentium*, no assent of parties. 1 Parsons on Con. 5–8; *Curry* v. *Rogers*, 21 N. H. 257; *Limerick Academy* v. *Davis*, 11 Mass. 113; *New Bedford & Bridgewater Turnpike Co.* v. *Adams*, 8 Mass. 138; *Watson* v. *Stearns*, 19 Pick. 73;—and PARKER, C. J., recognizes the doctrine of *Limerick Academy* v. *Davis*, *supra*, in *Trustees of Farmington Academy* v. *Allen*, 14 Mass. 172;—2 Gr. Ev., sec. 105.

III. The reasons set forth in the fourth ground of the motion for a nonsuit are sufficient, and the motion should have been allowed for those reasons. The defendants merely promised to give a gratuity of $1,000 to some person or persons. The language used by them cannot be construed into anything else. If they did not mean the sum promised as a gratuity, why did they not take, or agree to take, stock in the proposed company, or something of value for the money which they agreed to pay? They did not; and the fact shows conclusively that they meant it as a mere gift, which was without consideration, and not binding on them. The words of a contract are to be construed according to their ordinary and usual meaning. And the word "gratuity"

has a fixed and definite meaning in the English language, and cannot receive by judicial interpretation any other meaning. It is defined by lexicographers as follows: GRATUITY—A present, a recompense, a free gift. Worcester's Quarto Dictionary. GRATUITY—(1) A free gift, a present, a donation, that which is given without compensation or equivalent. (2) Something given in return for a favor, an acknowledgment. Webster's Quarto Dictionary. GRATUITY—Anything given from mere kindness, a voluntary or free gift, not stipulated or bargained for, for which no return is expected. Richardson's Dictionary, vol. 1. GRATUITY, RECOMPENSE—They both imply a gift, and a gift by way of return for some supposed service; but the gratuity is independent of all expectation as well as right; the recompense is founded upon some admissible claim. Crabb's Synonymes. GRATUITOUS, VOLUNTARY—Gratuitous is opposed to that which is obligatory; voluntary is opposed to that which is compulsory or involuntary * * . What is gratuitous is voluntary, although what is voluntary is not always gratuitous. Crabb's Synonymes. GRATUITOUS—Without valuable or legal consideration. In old English law, voluntary, without force, fear, or favor. Bracton, pp. 11, 17. Burrill's Law Dictionary.

The authorities above cited on this point are deemed sufficient to fix with certainty not only the ordinary and usual, but the legal meaning of the word "gratuity." Nor does its use by the defendants, in view of the fact that they would take no stock, nor in any way become interested in the proposed corporation, imply any other meaning than that what they promised was intended as a mere gift; and therefore their promise was without consideration—a mere *nudum pactum*.

IV. A nonsuit should have been ordered by the court, for the reasons set forth in the fifth ground for the motion. In simple contracts the consideration should appear, and in all contracts the names of the parties should be set forth,—the name of the party promising, or to be bound, and of the party to whom the promise or obligation is made. 1 Pars. on Con. 354; 2 Pars. on Con. 294–298, and authorities cited in note *u*, p. 244; Story on Con., sec. 112; 1 Bouv. Ins. 237; Chitty on Con. 4, 7, 55; 2 Gr. Ev., sec. 105; Browne's Stat. of Frauds, sec. 372; *Sherburne* v. *Shaw*, 1 N. H. 159.

In the alleged contract of the defendants, the consideration is not set forth, nor the person or persons to whom the promise was made. It will not be contended that the mutual promises of the parties signing the agreement to take stock in the corporation, &c., was a consideration for the promise of the defendants. And this action is an admission that the promise was not made to them, but assumes that it was made to the plaintiffs not then in being. Therefore the agreement of the defendants lacks the essential elements of a legally binding contract.

V. The court erred in not ordering a nonsuit, for the reason alleged in the sixth ground for the motion. The declaration alleges, as a part of the consideration of the promise of the defendants, that the plaintiffs were to organize a corporation, with a "paid up" capital of

$50,000. The evidence proves that the consideration was that the capital should be paid in cash, but in fact was paid partly in labor. It is a fatal variance between the allegation and the evidence.

VI. In conclusion, it may be remarked that, although the jury found to the contrary, the defendants believed, and still believe, notwithstanding the finding of the jury, that the signature of Hoit & Colony to the alleged promise was procured of the defendant Hoit by fraudulent misrepresentation. If they did not so believe, they would not be here opposing the recovery of the plaintiffs, but would redeem their promise if it were not binding in law.

The defendants also insist upon the exception to the ruling of the court, by which the subscription paper for stock was admitted. It was *res inter alios acta.*

*Wheeler & Faulkner,* for the plaintiffs.

1. On or about the twentieth day of April, 1871, certain persons were desirous, for various reasons, of having a factory for the manufacture of boots and shoes established in Keene. Some expected to derive a direct benefit from the profits of the business, and these were willing to invest their money in the business. Others, like T. H. Leverett and Faulkner & Colony, expected to derive a direct benefit from the profits of the business, and an indirect benefit from the sale of their lands in the immediate vicinity of the factory, and these were willing, not only to invest their money in the business, but also to give a portion of their real estate upon which the factory should be placed, and through which roads leading to it from different quarters should be opened; while the defendants, not desiring to engage in the business, but expecting to derive an advantage in the increased value of their real estate from the establishment of a new branch of industry in close proximity to their property, were willing to contribute money to secure a result so desirable.

The result of this concurrence of interests was the execution, by all these parties, of the instrument upon which this suit is founded, the formation of a corporation with a paid up capital of $50,000, the erection of a factory upon an acre of land conveyed by Leverett, and the opening of the desired streets by him and Faulkner & Colony.

Of the parties to the instrument, all have fully performed their agreements, except the defendants. They have refused to pay the money which they agreed to pay; and, in answer to the action brought to enforce performance, they allege that their signature was obtained by fraud—which allegation the jury have found to be unfounded in fact; that the plaintiffs cannot maintain the action, because the promise was not made *to* them, because no promise to pay *to* them was made; and that no person or persons can maintain any action against them upon their promise, because it was without consideration.

The determination of these legal objections depends upon the construction which the court shall place upon the instrument; and, in giving this construction, the court will place itself as nearly as it can in

the situation of the parties, and then determine from the language used what they intended.

2. Although the instrument itself contains different agreements be-tween different parties, yet, as all these parties and agreements had one object in common, the whole must be construed together in order to ascertain what contract was made by the defendants, and with whom it was made: for that they undertook to make some contract with some one we presume will not be denied.

Looking at the situation of the parties, it seems impossible to come to any other conclusion than that they must have understood that the money which they proposed to pay, upon the performance of certain conditions, was to be paid to the corporation whose formation was a condition precedent to its payment. It is true, that the individuals, who signed the agreement immediately preceding that signed by the defendants, afterwards became the corporation; but it is apparent that all the acts from which the defendants were to derive a benefit,—such as procuring the land from Leverett, the erection of the factory upon it, and the investment of the capital in the business,—were to be per-formed by the corporation. Moreover, if the money promised by the defendants was to be paid to the individuals, they would take it in equal shares, without regard to the amount of their contribution to the general object, which would be clearly inequitable, and, therefore, not to be presumed; whereas, if paid to the corporation, each stock-holder would derive a benefit proportioned to his investment, and the corporation, from whose prosperity the defendants hoped to derive an indirect benefit, would be strengthened. The subscribers, as individ-uals, could subscribe for the capital stock and form the corporation, and there their power ceased; but from these acts alone the defend-ants would derive no benefit, and it is to be presumed that the defend-ants intended to reward the party from whom the benefit was expected.

3. The objection, that the action cannot be maintained because the declaration and evidence showed that the plaintiff corporation was not in existence at the time of the alleged promise, was properly overruled. It is well settled, not only that a corporation may be held to the performance of contracts made before it had a legal existence, by the promoters of the enterprise, for beneficial services rendered—*Low* v. *Conn. & Pass. River Railroad Co.*, 46 N. H. 294—but, also, that it may maintain an action to enforce a promise made for its benefit prior to its organization, or even to the act of incorporation. Redf. on Railw., sec. 57, p. 97, and cases cited.

This is the law as established by numerous decisions relative to stock subscriptions, and there can be no distinction in principle be-tween a promise to take and pay for stock, and a promise to pay money for the benefit of the corporation generally. The consideration for an agreement to take and pay for stock is, that the future corporation will permit the subscriber to take it, or, in other words, will issue it to him; and the consideration for the defendants' agreement to pay $1,000 to the future corporation was, that the corporation would

organize for the purpose of carrying on the business of manufacturing boots and shoes, raise a capital of $50,000, procure from Leverett a conveyance of an acre of land near the defendants' real estate, cause streets to be opened to it, thus increasing the value of the corporation property, and, consequently, its ability successfully to conduct the business in which it was about to engage, and establish its factory upon the lot of land so conveyed.

4. Even if the court should be of opinion that the evidence failed to sustain the first count of the declaration, the second count is not liable to such objection.

The offer of the defendants will undoubtedly be construed by the court as an offer to pay, in case the material stipulations contained in the preceding agreement should be performed within a reasonable time.

It might, perhaps, have been revoked before acceptance or actual performance of the conditions, but until revoked, or until such reasonable time had elapsed, it must be treated as a continuing offer for every instant of time until accepted, and when accepted it changed its character from that of a mere offer to that of a valid contract. *Boston & Maine Railway* v. *Bartlett*, 3 Cush. 224. The inducement to the plaintiffs' acts having been the defendants' offer, these acts are properly alleged to have been done at the defendants' request,—a request, it is true, ante-dating, when first made, their corporate existence, but continuing until after the corporation was formed, and then acted upon.

A case illustrating our position may readily be supposed. If the defendants had advertised that they would pay the sum of $1,000 to any person or persons who would invest the sum of $50,000 in the manufacture of boots and shoes in Keene, and would establish the factory upon a particular piece of land in the immediate vicinity of the defendants,—and a corporation thereafter formed, induced by and acting upon the defendants' offer, had invested a capital of $50,000 in such manufacture, and erected their factory upon the land described,—no one would contend that the corporation could not maintain an action to recover the money, either on the ground that the offer was without consideration, or that it was not made in terms to the corporation, or that the corporation was not named as payee in the published offer.

If the defendants' position in the case is correct, all the actions which have been successfully prosecuted for the recovery of rewards offered for the return of stolen property, or the apprehension of criminals, have been founded in error.

5. The rule of law being, that, when a special contract has been fully executed on his part by the plaintiff, and nothing remains but the payment of the price in money by the defendant, the plaintiff may declare generally, using the common counts,—the plaintiffs in this case would be entitled to recover under the money counts, if the special declaration were defective. 2 Gr. Ev., sec. 104.

6. Although the defendants agreed to pay in cash a gratuity of $1,000, the court, in construing the contract, will not be bound by the

defendants' erroneous use of terms. If the promise to pay the money rested upon any consideration, past, present, or future, the payment could not be a gratuity, although the parties might call it such. A gratuity is a voluntary gift, and the essence of a voluntary gift is, that it is without legal consideration. If A should give to B his promise, in writing, as follows,—" In consideration that B will sell and deliver to me his black mare, the undersigned agrees to pay him, in cash, a gratuity of one hundred dollars,"—would any one claim that B, having delivered the horse, could not maintain an action upon A's promise because it was without consideration—a mere *nudum pactum* ?

The defendants evidently used the word "gratuity" to distinguish their subscription from that of all the other subscribers of the instrument. The others were to receive stock for their money, while the defendants were to receive nothing directly from the corporation, and therefore called the amount promised by them a " gratuity."

7. Having already fully answered the defendants' fifth and sixth objections, we take leave of this branch of the case, quoting, as particularly applicable to this case, the language of Chief Justice SARGENT, in *Porter* v. *Raymond*, 53 N. H. 519 : " The plaintiffs are the proper parties to recover this money in their own name. It might be a much more troublesome question to decide who could properly collect this money, if the plaintiffs could not."

8. The payment of a small portion of one or two subscriptions in labor instead of cash, can be no answer to the plaintiffs' claim. The agreement between the subscribers to the stock was, that not less than $50,000, payable in cash, should be actually subscribed before any portion of the sum so subscribed should be payable. Upon production of the subscription paper, it appeared that nineteen individuals and firms had agreed to take 500 shares of $100 each; and, as no other mode of payment is mentioned, payment in money is the inference of law. The fact that afterwards the directors employed some of the subscribers to labor for the corporation, and in settling their bills did not insist upon the useless ceremony of paying in cash for the labor, and then requiring the subscription to be paid in cash, can be no just ground of objection on the part of these defendants. In *Porter* v. *Carpenter*, Cheshire August adjourned term, 1874, the objection, that certain subscribers had been permitted to pay the amount of their subscriptions by the conveyance of real estate, was overruled.

\* STANLEY, J., C. C.    Let us first examine, and see what the contract relied on was. It was a mutual agreement, on the part of nineteen individuals and firms, to subscribe for stock in a corporation to be thereafter organized, for certain purposes and upon certain conditions therein named. It then contained an agreement, claimed to be binding on the defendants, by which they, in consideration of the fact that these nineteen individuals and firms had agreed to take stock as

---

\* CUSHING, C. J., having been of counsel, and LADD, J., having presided at the trial, did not sit.

therein set forth, agreed to contribute or pay in cash one thousand dollars. Was this agreement, so far as the subscribers to it were concerned, binding upon them? In *Low* v. *Railroad*, 45 N. H. 376, it is said, that "agreements made with corporations after their charter, but before organization, such as agreements to take and pay for shares in the capital stock, have been repeatedly enforced, and even by suits at law;" and BELLOWS, J., cites 16 Mass. 94, and 6 Pick. 23, as cases where "subscribers to stock, before organization, were held liable for assessments to pay preliminary expenses incurred in obtaining the act of incorporation, and ascertaining the practicability of the enterprise."

That this was a voluntary corporation, organized under general laws, can make no difference. One of the first acts to be done was to procure the subscription for stock; and if parties who subscribed therefor were not bound by their subscription, it would be strange indeed. In the case of a special charter by the legislature, one of the first acts to be done after the charter is granted is to obtain the subscriptions to stock. Under the general law, the same thing is required to be done,—namely, to procure the stock subscriptions.

In *Railroad* v. *Mason*, 16 N. Y. 451, which was the case of a corporation organized under the general railroad law of that state, the defendants subscribed for certain shares of stock in the corporation before the articles of association were signed and filed according to law; and the court held that the subscription was valid, and that it could be enforced. If, then, the agreement was binding on the subscribers, I am of opinion that it was properly admitted in evidence, and that the first and second grounds for nonsuit cannot, on the authority of *Low* v. *Railroad*, *supra*, and *S. C.*, 46 N. H. 284, be sustained.

But it is said that the nonsuit should have been ordered because the undertaking of the defendants was *nudum pactum*; but I am unable to take that view. The undertaking of the defendants was, to pay towards the enterprise specified in the agreement the sum of one thousand dollars. The consideration upon which the defendants made this promise was, that the subscribers to the stock should proceed and erect their factory, and commence business with the capital raised by the subscriptions to the stock. The agreement was, on the one part, by the subscribers to the stock, of whom the plaintiffs are the successors, or, rather, with the plaintiffs,—for the understanding and agreement was, that the subscribers to stock should unite and form the plaintiff corporation,—and on the other part by the defendants. The subscribers to the stock carried out their part of the contract. They organized a corporation, they erected their building, Leverett conveyed the land, the street was opened, and everything which they agreed to do was done; and the defendants, having received the benefit of the consideration upon which their contract was made, are now liable upon their promise.

It is urged that the agreement of the defendants was a gratuity; that it is so expressed; and that, being a gift, it is without consideration;— but the court will not confine themselves to the strict language used, but will look at the whole contract, and see whether it is in fact a gift

and without consideration, or whether there is in fact a consideration. Looking, then, at this instrument,—what was it? Simply a promise on the part of the defendants that if the subscribers for stock would go forward and carry out their enterprise to completion, they, in consideration of that fact, and that their property would thereby be benefited, would contribute towards the same object the sum of one thousand dollars. When, as we have seen, the plaintiffs have executed their part of the agreement, and the defendants have received the benefit of it, I can see no reason why the defendants should not be held to perform their part of it.

The exception that the evidence shows, that some of the subscriptions were paid in labor, and that by its terms they were to be paid in cash, cannot avail. They were to be paid in cash,—that is, they were unconditional. The fact, that afterwards labor was received by the plaintiffs in lieu of cash, does not invalidate the agreement, or excuse the defendants from the performance of their promise. There is no suggestion that the labor was not performed, or that an exorbitant price was allowed for it. Of what consequence then was it, whether the plaintiffs received the money from the subscriber to stock, and then paid it back to him for his labor, or that they received his account for labor as part payment towards the subscription for stock? To require that the subscription should be paid in in cash, and then pay to the subscriber cash for his labor which he had performed for the plaintiffs, would be an idle ceremony, and one which could be of no advantage to any one.

The exception to the admissibility of the agreement cannot be sustained on the ground that it was *res inter alios acta*. It was, in fact, the act of the parties to this suit; for, as we have seen, the subscribers to the stock, with whom it was made, are represented by the plaintiffs, or, rather, the plaintiffs are the legal representatives of the subscribers to stock. It seems to me that it may as well be claimed that if the defendants made a special agreement with a person deceased, and the administrator had brought a suit thereon, the contract could not be admitted in evidence. The two cases are the same in principle, and the statement of the proposition, or, rather, of the objection, of the defendants in this form, shows its fallacy.

FOSTER, C. J., C. C.   I am of the same opinion.   The cases *Underwood* v. *Waldron*, 12 Mich. 73, *Comstock* v. *Howe*, 15 Mich. 244, *State Trustees* v. *Cross*, 9 Vt. 293, *Selma & Tenn. Railroad Co.* v. *Tipton*, 5 Ala. 787, *Goodhue* v. *Beloit*, 21 Wis. 649, *Van Rensselaer* v. *Aiken*, 44 Barb. 547, and *Collier* v. *Baptist Educational Society*, 8 B. Mon. 68, are authorities in support of the views expressed by my brother STANLEY;—see, also, A. & A. Corp., sec. 172, and Met. Con. 185.

SMITH, J.   In *Low* v. *Railroad*, 45 N. H., 376 *et seq.*, are numerous authorities cited by BELLOWS, J., which fully support the claim that this suit may be maintained.   Exceptions overruled, and

*Judgment on the verdict.*