THE TOWN OF GRAND ISLE *vs.* M. O. KINNEY, et al.

January Term, 1898.

Present: ROSS, C. J., ROWELL, TYLER, MUNSON and THOMPSON, JJ.

*General Issue Waiver of Demurrer—Amendments in Referred Cases—
V. S. 3086—Contract with Selectmen—Parol Evidence to Contradict
Writing—Consideration—Estoppel—Corporation.*

Pleading and going to trial upon the general issue is a waiver of a
demurrer previously filed.

In a case referred by consent of parties the declaration may be amended to
adapt it to the facts reported, provided the cause and form of action
remain unchanged.

A contract with selectmen as such is enforceable in the name of the town.

The defendants contracted in writing with the plaintiff to pay one
thousand dollars, or such part thereof as might be required to complete
a public bridge in excess of such sums as might be thereafter voted by
the plaintiff or other towns in the county or donated by individuals,
and the instrument stated that it was given to enable the town to
contract for the construction of the bridge. *Held,* that the defendants
were not entitled to show by parol that the bridge was to be built by
the town by the day's work, and that it might have been done so more
cheaply; for this would contradict the writing; nor that it was given
solely to enable the town to procure the certificate of the state engineer,
upon the strength of which the town was to receive aid from the state;
for this would be to show that the contract was merely a sham and a
deceit; nor that the town was to have raised money by subscription or
vote and thereby save the defendants harmless; for that would be
equivalent to showing that the contract was of no force.

The vote of the plaintiff to pay the balance due on a judgment against it
for the cost of building the bridge, accompanied by a vote to enforce this
contract, cannot be construed as a raising of money by the town to take
the place of that which the defendants, by that contract, had agreed to
pay.

The writing was supposed to be lost and secondary evidence of its terms
was admitted; but later it was produced, and the referee properly held
that no further parol evidence was admissible in that behalf upon either
side.

The plaintiff was not bound to build the bridge but was authorized to do
so by a special act which tendered the aid of the State when the plaintiff
should have raised a certain sum from its own means and the contribu-
tions of individuals. Hence it cannot be maintained that there was no

consideration for the defendants' promise on the ground that it was an undertaking to perform a public duty of the plaintiff.

Nor can it be maintained that the defendants' contract was against public policy, for the act impliedly provided for individual aid.

Whether the defendants had, or not, any special interest in the building of the bridge, the plaintiff acted and incurred burdens in reliance upon their promise, and this fact constitutes a consideration.

The defendants having by their promise induced the plaintiff to proceed under the act are estopped from objecting that the plaintiff had no authority to do so.

The findings of a referee must stand if there is any evidence to support them.

By an act of the legislature certain individuals, their associates, etc., were constituted a corporation and authorized to organize and to build the bridge in question. No stock had been subscribed for nor any organization formed when a later act, referring to said corporation as already "created and constituted" by the former act, authorized it to transfer, by its directors, all its rights and franchises to the plaintiff, whose selectmen should thereupon be the directors. *Held*, that the corporators under the first act were authorized, without subscribing for stock, to organize and elect directors, and through those directors to make the transfer.

If the transaction was irregular none but the State or the taxpayers of the plaintiff could complain, and both have ratified it by their conduct.

SPECIAL ASSUMPSIT. At the February Term, 1896, Grand Isle County, *Start*, J., presiding, the cause was heard upon demurrer to the declaration, and the demurrer was overruled and exceptions of the defendants to that ruling were ordered to lie. At the August Term, 1896, a new declaration was filed. At the August Term, 1897, *Taft*, J., presiding, the cause was heard upon the report of a referee, the defendants' exceptions thereto and motion to recommit. The motion was denied, the exceptions overruled, and judgment rendered for the plaintiff. The defendants excepted.

*Wilson & Hall* and *H. M. Mott* for the defendants.

*W. H. Bliss* for the plaintiff.

Ross, C. J. (1) By pleading the general issue, after their demurrer was overruled, and going to trial upon it, the defendants waived their demurrer. *Rea* v. *Harrington*, 58 Vt. 181. Thereafter, like any case referred by consent of the parties, the declaration, upon the coming in of the referee's

report, was amendable to any extent, to adapt it to the facts found and reported, provided the form nor cause of action was not thereby changed.   Hence we have not considered the sufficiency of the original counts of the declaration to withstand the challenge of the demurrer.

(2)   The defendants excepted to the refusal of the court to recommit the report to the referee, to have him receive and consider the testimony offered by them and excluded by him; and also filed exceptions to the referee's report because of his refusal to receive their offered testimony, and duly excepted to the overruling of these exceptions to the report by the court.   These exceptions raise the same question, namely:  Was the offered testimony relevant to any of the issues on trial? The issues on trial all related to the liability of the defendants to the plaintiff upon the following written instrument, signed by them and B. B. Hyde, since deceased:

"Whereas, the town of Grand Isle, in the county of Grand Isle, has by vote and otherwise raised the sum of $19,000 for the construction of a bridge between Grand Isle and North Hero, under and by virtue of an act of the legislature, and that the sum of $1,000 more is required in order to secure the certificate of Charles Clark, the engineer appointed by the governor of the State, that a sufficient amount has been raised to complete the bridge according to his plan and specifications, and thereby enable the selectmen of Grand Isle to contract for the construction of said bridge.

Therefore we, the undersigned, residents of Grand Isle County, while feeling assured that said bridge can be constructed for $40,000 and being interested in the construction of said bridge, and considering the same would be a great public benefit and convenience, hereby agree to pay the selectmen of the town of Grand Isle said sum of $1,000, or such part of said sum as may be needed to complete the said $20,000, after the expenditure of the said $19,000, and such sum or sums as may be hereafter voted by any town in Grand Isle County, or subscribed, or donated

by private individuals, or corporations for the same purpose."

This instrument is dated, Grand Isle, Vt., Nov. 18, 1889. Among the signers are the then three selectmen of the town of Grand Isle, and the three persons who contracted with the town through the selectmen as its agents, and built the bridge. While, in terms, the signers agree to pay the selectmen of the town, meaning such persons as should be selectmen when the payment should be required to be made, it was, in law, a contract with the town and enforceable in its name. V. S. 3086; *Fairfax* v. *Soule* et al., 10 Vt. 154.

It is to be observed that the agreement to pay is unconditional, to the extent of $1,000. This sum was subject to be reduced by sums thereafter voted, subscribed or donated. This agreement must be read and considered in the light of the law authorizing the town to build the bridge. By the act of the legislature passed in 1888, the State had appropriated $20,000 towards building the bridge, and provided that none of it should be used until the plaintiff, aided by other towns in Grand Isle County and by contributions of individuals, had appropriated an equal amount for the same purpose, and had obtained the certificate of the State engineer that the amounts thus appropriated would be sufficient to complete the bridge according to plans and specifications prepared by him. The engineer was also to direct the method of expending the appropriations.

The testimony offered and excluded by the referee against the exception of the defendants, when condensed, amounts to an offer to show that they were not to pay anything on their contract in any event, because of several reasons: (1) That the work was to be done by the town by days-work, and not by contract, and in that way the work could be done more cheaply, and the bridge would cost less than $40,000. But the contract signed says it is given to enable the town "to contract for the construction of said bridge."

(2) That it was given solely to enable the town to get the certificate of the State engineer. This, too, is a contradiction of the plain import of the instrument. In short it is no more than an offer to show that the instrument was a sham, or a cunning device to be used for the sole purpose of deceiving the State engineer. (3) That the town was to raise enough by subscription, or by. vote of the town, so that the defendants would not be called upon to pay anything under the contract. No such agreement is included, nor implied, in the instrument."

These are the substance of the several offers. The offers are repeated, some of them, several times, and clothed in different language. They all either contradict, vary or ,add to the plain import of the instrument, or tend to show that it was intended for a sham, or device to cheat the State engineer. The defendants offered to establish these offers by the declarations of the selectmen of the plaintiff, made to themselves and the other signers, at the time the instrument was executed. It may well be doubted if the selectmen were agents of the town for any such purpose. *Folsom* v. *Underhill*, 36 Vt. 580; *Underhill* v. *Washington*, 46 Vt. 767. If so, their declarations were clearly inadmissible to contradict, vary, or add to the written instrument signed by them, or to show that it was a sham or device contrived to deceive and cheat the State engineer. *Morse* v. *Low*, 44 Vt. 561; *Smith* v. *Burton*, 59 Vt. 408; *Gillett* v. *Ballou*, 29 Vt. 296; *Wilbur* v. *Prior*, 67 Vt. 508; *Conner* v. *Carpenter*, 28 Vt. 237; *Blodgett* v. *Morrill*, 20 Vt. 509. The last two cases are to the point that the law does not allow parties to a contract to show that it was gotten up as a sham, or to deceive and defraud. None of the offers are within the well established exceptions to the rule that parties to a written agreement cannot contradict, vary or enlarge it; such as an independent or collateral contemporaneous agreement not intended to be, and not a substantial part of the written agreement; or a subsequent agreement operative upon the

original. These were contemporaneous with the written, and, if made, inhered in and were an essential part of it, operating to make the written agreement of no validity.

The referee properly excluded them, as held by the trial court. This is not an action to reform the written agreement, and the rules governing the admission of testimony in such action have no applicability to this action.

Nor was there error in rejecting this offered testimony on the ground that the plaintiff had opened the door for its admission by the testimony of D. I. Center. The written agreement was supposed to be lost, and Center was used to establish that it was signed by the defendants, and its terms. When it was subsequently found, this testimony became immaterial. The plaintiff could make no use of it, for the written contract was conclusive as to who had signed it and its terms. Neither could the defendants introduce testimony on the subject of whose signatures were affixed to it, nor of the terms of the written contract. That subject was concluded to both parties by the production of the written contract.

(3) The defendants excepted to the judgment rendered on the report, because, as they contend, the facts found do not show any consideration for the agreement of the defendants to pay anything towards the construction of the bridge. They make this contention on the ground that it was the *sole duty* of the town to build the bridge, and that the benefit to be derived therefrom was to the public, in general, and did not in any respect specially enure to the benefit of the defendants. The bridge was not wholly in the town of Grand Isle. Under the statutes casting the burden of constructing and maintaining necessary highways within its borders upon the plaintiff, no duty was cast upon it, nor right given to build this bridge. The bridge was to be constructed across a portion of Lake Champlain, and a special charter from the legislature was necessary to

authorize it.   By an act of the legislature, passed in 1886, certain individuals named, their associates, successors, and assigns, were constituted a corporation, and authorized to organize and build the bridge in the time, with the rights and in the manner therein prescribed.   In 1888 the legislature passed another act, among others, authorizing the plaintiff, on its vote to accept of its provisions, to take a transfer of the rights and franchises conferred by the act of 1886 upon that corporation, tendered a contribution from the State of $20,000, towards constructing the bridge, provided the town should from its own means, and by contributions of other towns in the county, and of *individuals,* raise a like sum for that purpose.   This did not cast the burden on the plaintiff, unaided, to construct the bridge, but in terms, allowed it to accept the burden, and to receive contributions thereto from individuals.   This renders it unlike, in principle, any of the cases cited by the defendants in support of their contention.   The written contract signed by the defendants declares that they are "*interested* in the construction of said bridge."   This *prima facie* declares such an interest as would be a valid consideration for their agreement, the same as in a promissory note signed by the maker, the words, "for value received," *prima facie* import a valid consideration for his promise to pay it.

But it is not necessary that a special benefit should be shown to have accrued to the defendants from the construction of the bridge.   It is sufficient if the plaintiff, in reliance upon the agreement of the defendants, has taken upon itself burdens which it would not otherwise have taken.   One of the declared purposes, embodied into the agreement was to enable the plaintiff to show the State engineer that it had in money, voted by itself, and in contributions, including this one, $20,000 available for building the bridge, so that it was entitled to the appropriation by the State.   The agreement was made, and delivered to the selectmen of the plaintiff to be used, and

was by them used, to secure the certificate of the State engineer. This was followed by the making of the contract by the plaintiff for the construction of the bridge, as was also contemplated by the agreement.

The plaintiff, by force of the contract thus induced, has been compelled to pay the full amount of $20,000 used to obtain the certificate of the State engineer, for the construction of the bridge. All this was done with the knowledge and without the objection of the defendants. The detriment to the plaintiff induced by the agreement of the defendants is ample consideration for their agreement to pay the sum stipulated. *University of Vermont* v. *Buell*, 2 Vt. 48; *State Treasurer* v. *Cross & Day*, 9 Vt. 289; *Troy Academy* v. *Nelson*, 24 Vt. 189; *Methodist Episcopal Society* v. *Lake*, 51 Vt. 353; 24 Am. and Eng. Ency. of Law, (Title subscriptions) 326 to 334, and cases cited in notes.

What has been said on this point answers also the defendants' contention that their agreement with the plaintiff to contribute toward the construction of the bridge was against public policy. The act of 1888, impliedly, if not in expressed terms, declared it to be the policy of the State to allow *individuals* to aid the plaintiff by subscriptions, or contributions, in the construction of the bridge.

(4) The defendants further contend that the plaintiff has no capacity to enforce this agreement, because they say that the corporation created by the act of 1886 was never legally organized, nor its franchises legally transferred to the plaintiff. We think, clearly, from what has been stated, and from the fact that by their agreement the defendants induced the plaintiff to enter upon the undertaking, and to build the bridge, they are estopped from claiming that the plaintiff had, and has, no authority to build it. The law will treat both parties as they have treated each other, in respect to it, and compel the defendants to perform their agreement, which induced the action of the plaintiff in the

premises to its detriment. But were the question open to the defendants, on the facts found, we think, the plaintiff had lawful authority to construct the bridge.

Some questions have been taken to the findings of the referee in regard to the organization of the corporation, and the transfer of its franchises to the plaintiff, because against the weight of the evidence. Such objection is not available. The referee's findings are, like the verdict of a jury, not open to attack in this court, when there was any evidence introduced tending to support them. The referee is chosen by the parties to hear and weigh the testimony and find the facts, in place of the jury. The facts found and reported by him stand like a special verdict of the jury, and will not be disturbed in this court, if there was any evidence before him fairly tending to support his findings. This disposes of most of the objections to his findings in regard to notifying and the attendance of the corporators, their action, and that of their secretary and directors, in authorizing the transfer of the franchises, also to his finding that the bridge cost the plaintiff fully forty thousand dollars.

By the act of 1886 the corporation created was a stock corporation. Very likely, if the corporators had organized under that act for the purpose of building and operating the bridge, a subscription to the stock would have been necessary to its regular organization. But before such organization had taken place the act of 1888 provided "The Grand Isle Bridge Company, a corporation *created* and *constituted* by an act entitled, 'an act to authorize the construction of a bridge from Grand Isle to North Hero,' approved November 3, 1886, may assign and transfer its rights, privileges and franchises to the town of Grand Isle," if it should vote to accept the same, and to issue negotiable bonds for the purpose of constructing the bridge. The act then provides that, in case of a vote to accept the franchise by the plaintiff, "the directors of said bridge corporation are hereby authorized to make and conclude, in behalf of said corporation, such conveyance as may be necessary to

complete such transfer." No method of organizing the corporation and electing directors is provided. The act of 1888 provides that when the transfer is made the selectmen of the town (who would not be stockholders,) shall be the directors of the corporation. Hence, we think, under the acts of 1886 and 1888, the corporators named in the act of 1886, without subscribing for stock, impliedly, at least, were authorized to organize the corporation and elect directors as they did, and the directors to make the transfer in the manner in which it was made. If there was an irregularity in organizing the corporation, or in making the transfer, the construction of the bridge at that place, not being prohibited, but authorized by law, the only parties who could complain of the action of the plaintiff under the transfer would be the State and the taxpayers of the plaintiff. The State, by its engineer, authorized the town to contract for the building of the bridge, and contributed twenty thousand dollars towards its construction.

It has thereby endorsed, and did not complain of, the acts of the plaintiff under the act of incorporation. The taxpayers of the plaintiff have also endorsed this action, by knowingly allowing it to proceed, and by allowing the town to issue its bonds and to raise money to carry forward the work. When the act is not prohibited by law, the taxpayers, if they would intervene, must do so at the earliest opportunity, and before the rights of other parties have become involved. *R. & B. R. R. Co.* v. *Proctor*, 29 Vt. 93; *Vt. & Canada R. Co.* v. *Vt. Central R. Co.*, 34 Vt. 2.

Hence on any view, the plaintiff is entitled to enforce this agreement against the defendants.

(5) The vote of the plaintiff to pay the balance due on the judgment against it for building the bridge, accompanied by the vote to enforce this agreement, cannot be tortured into raising money by the town to take the place of the money agreed to be paid by the defendants. There are no other exceptions urged which we deem material.

*Judgment affirmed.*