# Converse's Estate.

*Contracts—Charitable subscription—Conditional subscription—Death of subscriber—Liability of estate—Decedents' estates.*

An agreement to subscribe a definite sum toward an endowment fund of an educational institution, upon condition that a certain other sum should be raised from other sources, is a valid and binding promise, which is not revoked by death, and may be enforced against the estate of the promisor. It was no error, there-

fore, for the Orphans' Court to order the executors of the subscriber to retain the amount of the subscription during a reasonable time, so as to ascertain whether the other subscriptions would be obtained, and if they were obtained within a period of approximately six months after the filing of the opinion of the court sustaining such order, to authorize the payment of the subscription.

Argued March 27, 1913. Appeal, No. 95, Jan. T., 1913, by The Philadelphia Trust Safe Deposit and Insurance Company, Trustees for Helen Converse Thorpe and Mary E. Converse, from the order of O. C. Philadelphia Co., April T., 1910, No. 393, dismissing exceptions to adjudication in re Estate of John H. Converse, deceased. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication.

DALLETT, P. J., filed the following opinion on exceptions to the first account:

The exceptions filed on behalf of Park College relate to the refusal of the auditing judge to allow or secure the claim of said college for $10,000, based upon the following letter written by the testator.

"Phila., Feb. 7, 1910.

"Rev. Cleland B. McAfee, D. D.,

"85 So. Oxford St.,

"Brooklyn, N.Y.

"Dear Mr. McAfee:—

"I have yours of the 5th inst. respecting the endowment fund of Park College. When I made the offer several years ago financial conditions were different, and I cannot now renew that pledge. I will, however, agree to give $10,000 towards the endowment fund of $200,000, and pay the same when the entire amount is covered by valid pledges or payments.

"JOHN H. CONVERSE."

It appears from the testimony that at the time the letter was written but $2,000 had been subscribed toward the endowment fund, and that at the time of Mr.

Converse's death but $14,000 had been paid or subscribed. At the present time approximately $125,000 has been paid or pledged. It also appears that Mr. Converse's subscription was used as an inducement to others to subscribe and it is a fair presumption that his subscription had some effect in inducing further subscriptions: Pierson's Est., 6 Pa. D. R. 23.

As a matter of fact the auditing judge has found "that on the faith of this promise numerous other subscriptions" were obtained.

Two questions confront us—first, was there a consideration for the promise, and, second, did Mr. Converse's death, the condition not having been performed in his lifetime, revoke his subscription.

As was said by PENROSE, J., in Pierson's Estate, supra, a valuable consideration sufficient to make a promise binding may be

(1) A payment made or an act done by the promiser at, or (if moved by a previous request) before, the time of the promise of the promiser; (2) a contemporaneous promise by the promiser or some third person; or (3) a subsequent act "on the part of the promiser or some third person, induced by the promise of the promiser but not done by reason of any obligation of the promisee or third person. In the latter case the contract is unilateral, and the promiser may withdraw at any time before performance has been begun by the promiser, &c., but not afterwards: Addison on Contracts, *23; 26 Hare on Contracts 304, 309-10; Pollock on Contracts 12, Note (M)."

And as was said by Mr. Justice THOMPSON in Presbyterian Board of Foreign Missions v. Smith, 209 Pa. 361.

A test of good consideration is whether the promisee at the instance of the promiser has done, forborne or undertaken to do anything real, or whether he has suffered any detriment or whether in return for the promise he has done something that he was not bound to do

or has promised to do some act or has abstained from doing something.

"If any of the elements of such test be established the consideration becomes sufficient to support a promise although its inadequacy may be grossly disproportionate to the promise. The law does not consider such inadequacy and a learned judge has significantly said that the smallest spark of benefit or accommodation was sufficient to create a valid consideration for a promise."

We must conclude, therefore, that as other subscriptions were secured on the faith of Mr. Converse's promise, something had been done, money paid by others, and that consequently his promise had in his lifetime become a contract based upon a valuable consideration, and had he lived and $190,000 been paid or pledged, he would have been liable for the payment of his subscription of $10,000 and it could have been secured by legal process.

Did his death revoke the promise? A contract to pay money which falls due after the death of the obligor undoubtedly survives. "And what is the difference," as was said by Mr. Justice THOMPSON in White v. Commonwealth, 39 Pa. 167, "between an agreement to pay at a future period or on a future contingency? The contract is to be completed, not by any personal performance, but by the payment of money. This act an executor can do as effectually as the testator."

This authority was relied upon by FREAS, P. J., in Bennett's Est., 12 Luzerne Leg. Reg. Reps. 463, and we believe properly. We see no reason why, unless the engagement is personal and involves the performance of something which no one but the promisor can properly perform, death should avoid or revoke a contract based upon a valuable consideration, but the performance of which by the obligee has not been completed in the lifetime of the obligor.

Mr. Converse, as appears from the various claims presented at the audit based upon promises to make char-

itable gifts was in the habit of creating obligations of this class and as a moral proposition it would be unreasonable to believe that he only contemplated their fulfillment in the event that he should live to see the several and various ventures completed in his lifetime.

Stuart v. Second Presbyterian Church, 84 Pa. 388, apparently relied upon by the auditing judge and which is the only Supreme Court case called to our attention in which a conditional gift falling due after the death of the promisor has been considered, would seem to have been decided upon its own peculiar facts.

In that case Mr. Hamilton after having made and paid a number of subscriptions, made an additional subscription of $1,000 conditioned upon the whole amount of the remaining indebtedness of the church being raised. The indebtedness at the time was about $14,000 —and about $7,000 had been subscribed at the date of his death. By his will he devised real estate to the church which was sold for $7,000, and Mr. Justice PAXSON for the Supreme Court reversed the judgment entered by the Court of Common Pleas in favor of the church for the amount of the subscription, $1,000, and although he did hold that the subscription was nudum pactum and imposed no liability on Mr. Hamilton's personal representatives after his death, he laid stress upon the fact that the subscription was to be good only when the whole amount of the debt had been raised by others and not by himself, as it eventually was by his gift by will.

Being of the opinion, therefore, that Mr. Converse's promise by reason of the other subscriptions induced thereby became a contract based upon a valuable consideration the fulfilment of which might be as well performed by his representatives after his death as by himself, we sustain the exceptions filed on behalf of Park College, and direct the accountants to retain $10,000 pending the acquisition of the balance of the endowment fund of $190,000 within a reasonable time, or until

further order by the auditing judge in the event that the project should for any reason fail of completion within a reasonable time.

On exceptions to the adjudication of the second account, DALLETT, P. J., filed the following opinion:

The exceptions filed in this estate relate to the award by the auditing judge of $10,000 to Park College. By the opinion of the court filed on May 17, 1912, (21 D. R. 571), the accountants were directed "to retain $10,000 pending the acquisition of the balance of the endowment fund of $190,000 within a reasonable time, or until further order by the auditing judge, in the event that the project should for any reason fail of completion within a reasonable time."

As appears from the adjudication, the auditing judge has found that $188,185.69 on account of the necessary $190,000 has been paid to the proper authorities of Park College, and that $9,042.30 in addition has been subscribed by what are considered "valid pledges" and expresses the opinion that considering the magnitude of the enterprise, the number of people pledged, and the varying amounts of the subscriptions, the fund has been raised within "a reasonable time."

In view of the fact that the opinion of the court determining this question was filed on May 17, 1912, and the audit was held on November 8, 1912, a period of approximately six months, we agree with his conclusions as being in accord with the views expressed in our opinion.

The exceptions are therefore dismissed.

*Errors assigned* were dismissing exceptions to the adjudication.

*J. O. Michener,* for appellant, cited: Helfenstein's Est., 77 Pa. 328.

*Walter C. Rodman,* for Park College, appellee.

PER CURIAM, April 21, 1913:

The decree is affirmed at the cost of the appellant on the opinion of the learned president judge of the Orphans' Court.