EASTERN STATES. AGRICULTURAL AND INDUSTRIAL LEAGUE $v$.
ESTATE OF THEODORE N. VAIL.

October Term, 1923.

Present:   WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed May 7, 1924.

*Subscriptions—Construction of Subscription Contract—Rights
of Payee—Performance in Reliance on Subscription—Right
of Charitable Organization to Enforce Subscription Payable
to Its Treasurer—Revocation—Consideration—Effect of
Condition That Subscribers Shall Not Pay Until Certain
Amount of Subscriptions Secured—Limitation of Rule That
Death of A Subscriber to A Charitable Purpose Works A
Revocation—Where Time for Obtaining Subscriptions Not
Specified Reasonable Time Allowable—Presumptions—G. L.
2259—"Entitled"—Trial by Jury in Probate Appeals—
Form of Subscriptions—Exceptions Too General for Con-
sideration—Exceptions Must Reasonably Indicate Precise
Ground—Reliance on Subscriptions May Be Shown by Cir-
cumstances—Inadequate Briefing—Courts—Remanding to
Probate Court for Further Proceedings.*

1. Subscription agreements for public or quasi public enterprises are
favored in law, and as a matter of public policy are construed,
if they reasonably may be, to support a recovery, doubtful ques-
tions being resolved against subscribers who seek to evade
promised contributions.

2. A subscription contract is to be construed in accordance with the
purpose of the parties making it.

3. In a proceeding by a charitable organization on a subscription
agreement in which such organization was referred to. as the
"League" and each subscriber agreed that he would "contribute
and pay to the League" a certain sum annually, subject to
specified conditions, the plaintiff was properly considered as
the payee under the contract and entitled to enforce its claim
as such against a subscriber.

4. Although a charitable organization was not named in a subscription contract as payee, the subsequent performance of the agreement on its part in reliance on the subscriptions made for its benefit would be sufficient to give it standing to enforce the contract.

5. Although in terms subscribers agree to pay their subscriptions to the treasurer of a corporate charitable organization, the contract was in law with the organization, and enforceable in its name.

6. In the absence of any consideration for the undertaking, a subscription for a benevolent or charitable purpose is considered only as a continuing offer to make a gift, and while standing thus it may be withdrawn or revoked and is unenforceable, and is revoked by the death of the subscriber.

7. A subscription based upon an adequate consideration has the essential characteristics of a contract, and is subject to the rules applicable thereto.

8. If the subscription is unenforceable as being without consideration originally, but before its withdrawal the promisee performs acts, spends money, or incurs enforceable liabilities on the faith of the subscription in furtherance of the enterprise intended to be promoted, the right of revocation is lost and the subscription is thereby rendered valid, binding, and enforceable, subject to the conditions imposed by the contract.

9. The condition in a subscription agreement that the subscribers' "obligation to pay" shall not be fixed and binding until subscriptions to a certain amount shall have been made is not a matter of contract between the subscribers, but a limitation or qualification of each subscribers' liability to the beneficiary.

10. The rule that the death of a subscriber to a benevolent or charitable purpose works a revocation of the subscription applies only to cases where the decedent himself might have revoked the promise at the time of his death.

11. Where a subscription agreement, conditioned that the subscribers' obligations to pay should not be fixed and binding until subscriptions to a certain amount had been obtained, did not specify the time within which such condition must be met the law allows a reasonable time therefor.

12. In such a case, the death of a subscriber prior to the expiration of such reasonable time does not revoke the subscription, but

the beneficiary has a reasonable time within which to complete the raising of the fund, during which time the subscriber's estate would be bound to the same extent as he would have been if living.

13. Facts *held* to show that the condition of a subscription agreement that the subscribers' obligation to pay should not be fixed and binding until subscriptions to a certain amount had been obtained was met within a reasonable time.

14. In support of a judgment, the Supreme Court may presume that the trial court inferred a fact warranted as an inference from the facts found.

15. While under ·G. L. 2259, relating to the facts to be found by the county court before a bill of exceptions is allowed, the review is necessarily confined to the facts reduced to writing and filed by the court below, unaided by any inferences, the restriction is limited to cases in which a party is entitled to a trial by jury.

16. "Entitled" signifies a claim of right—the right to demand or receive.

17. In ordinary probate appeals, except when the allowance or disallowance of a will is the issue, there is no right to a trial by jury.

18. Individual subscription agreements, although not exact counterparts of the original which contained the condition that the "obligation to pay" should only become binding when *"bona fide* subscriptions" to a stipulated amount had been made, were not thereby made inadmissible, where they were of uniform tenor, for a common object, and in all material respects duplicates of the original.

19. An exception "to the findings in finding (21)" as unsupported by the evidence was too general, where such finding covered numerous findings, which it was not claimed were not supported by the evidence.

20. To make an exception available it must reasonably indicate the fault, and not leave the court in ignorance of the precise ground on which it is predicated.

21. In an action on a subscription agreement, the promisee need not produce direct evidence to support reliance on the promise, but it is sufficient if the circumstances support such an inference.

22. The briefing of an exception by stating, "Exhibit 21 was not ad-

32 .

missible for reasons already stated, no agreement had been established," and the statement that this also applied to the testimony of another witness, without calling attention to any portion of the brief where the question was discussed, did not consitute adequate briefing.

23.  In a proceeding to enforce a subscription agreement against the estate of a deceased subscriber, which was appealed from the probate court to the county court, and taken thence to the Supreme Court on exceptions to the judgment of the county court against the estate, in view of the provisions of G. L. 3453 and 3470, the cause should be remanded to the probate court, rather than the county court, where further proceedings are necessary with respect to installments of the subscription subsequently to become due.

APPEAL from the allowance by commissioners of a claim against the estate of Theodore N. Vail, deceased. Declaration on a subscription agreement. Answer, the general issue, and a partial payment. Trial by court in vacation after the December Term, 1921, Caledonia County, *Willcox*, J., presiding. Judgment for the plaintiff. The defendant excepted. The opinion states the case. *Affirmed, and certified to the probate court with directions.*

*W. B. C. Stickney* and *Edwin W. Lawrence* (*Nathaniel T. Guernsey* and *Neal M. Monroe*, of counsel) for the defendant.

A party to whom money is to be paid, and for whose benefit the contract is made, cannot sue if the contract is under seal. *Fairchild* v. *N. E. Mutual Life Insurance Co.*, 51 Vt. 613; *Johnson* v. *Colburn*, 36 Vt. 693; *Phelps* v. *Conant*, 30 Vt. 277; *Carpenter* v. *Ballard*, 10 Vt. 251; *Quarries Co., Ltd.* v. *Fidelity & Guaranty Co.*, 78 Vt. 445, 453; *Morrill's Admx.* v. *Catholic Order of Foresters*, 79 Vt. 479, 484; *Patterson's Admr.* v. *Modern Woodmen of America*, 89 Vt. 305, 314.

A subscription conditioned upon other subscriptions requires that they shall be made in good faith, by responsible parties, to the amount designated. *New London Literary Institute* v. *Prescott*, 40 N. H. 331; *Beeler* v. *Highland, etc.*, 54 Pac. 295; *Rogers* v. *Galloway Female College*, 44 S. W. 454; *Turner* v. *Baker*, 30 Ark. 186; *Waters* v. *Union Trust Co.*, 89 N. W. 687;

*Twenty-third Street Baptist Church* v. *Cornwell*, 23 N. E. 177; *Garard* v. *Monongahela College*, 6 Atl. 701; *Middlebury College* v. *Williamson*, 1 Vt. 212; *New York Exchange Co.* v. *DeWolf*, 31 N. Y. 273; *Carter* v. *Carter*, 31 Mass. 424; *Wasson* v. *Clarendon College*, 131 S. W. 852; *Siegler* v. *Winsted & Co.*, 125 S. W. 272.

A subscription conditioned that the obligation to pay was not to be fixed until a certain amount had been subscribed, is only an offer until such amount is subscribed, and the offer is revoked by a subscriber's death. *Turner* v. *Baker*, 30 Ark. 186; *Ritchie* v. *Rawlings*, 186 Pac. 1033; *Bates College* v. *Bates, etc.*, 135 Mass. 487; *Phipps* v. *Jones* (Pa.), 59 A. D. 708; *Stuart* v. *The Second Presbyterian Church*, 84 Pa. State, 388; *New London* v. *Prescott*, 40 N. H. 331; *Grand Lodge, I. O. O. T.* v. *Farman*, 11 Pac. 592; *Wallace* v. *Townsend* (Ohio), 3 N. E. 601; *In re Helfenstein* (Pa), 18 A. R. 449; *Pratt* v. *Trustee, etc.*, 93 Ill. 475; *Church* v. *Cornwell* (N. Y.), 23 N. E. 177.

*George B. Young* for the plaintiff.

A contract is to be construed in accordance with the purpose and intent of the parties making it. *Methodist Episcopal Society* v. *Lake*, 51 Vt. 353.

When a subscription to a charitable fund is made payable to a payee named, such payee may bring suit thereon in his own name. *Methodist Episcopal Society* v. *Lake, supra; Methodist, etc., Society* v. *Town*, 49 Vt. 29; *Sherwin* v. *Fletcher*, 168 Mass. 413, 47 N. E. 197; *Athol Music Hall Co.* v. *Carey*, 116 Mass. 471; *Thompson* v. *Page*, 1 Metc. 565; *Ives* v. *Sterling*, 6 Metc. 310; *Watkins* v. *Eames*, 9 Cush. 537; *Presbyterian Society* v. *Beach*, 74 N. Y. 72; *McDonald* v. *Gray*, 11 Iowa, 508; *Chambers* v. *Calhoun*, 18 Pa. 13.

Contracts of subscription to charitable purposes will be enforced whenever it appears that the promisee has acted upon the promise, and his acts constitute a legal consideration for the promise. *University of Vermont* v. *Buell*, 2 Vt. 48; *State Treasurer* v. *Cross*, 9 Vt. 289; *Troy Academy* v. *Nelson*, 24 Vt. 189; *Grand Isle* v. *Kinney*, 70 Vt. 381; *Montpelier Seminary* v. *Smith's Estate*, 69 Vt. 382; *Larkin* v. *Dana*, 12 Mass. 190; *Farmington Academy* v. *Allen*, 14 Mass. 172; *Amherst Academy* v. *Cole*, 6 Pick. 433; *Davis* v. *Smith American Organ Co.*, 117 Mass.

456; *Cottage St. Church* v. *Kendall,* 121 Mass. 528; *Nelson Real Estate Co.* v. *Tower,* 156 Mass. 82; *Watkins* v. *Eames, supra; Y. M. C. A.* v. *Estell,* 140 Ga. 291, and cases cited under 48 L. R. A. (N. S.) 787

The expenditure of time, labor, and money in securing additional subscriptions, the securing of which is made a condition to the subscription in question, constitutes a sufficient consideration. *Troy Academy* v. *Nelson,* 24 Vt. 189; *Montpelier Seminary* v. *Smith's Estate,* 69 Vt. 382; *Kentucky Baptist Ch. Ed. Soc.* v. *Carter,* 72 Ill. 247; *University of Des Moines* v. *Livingston,* 57 Iowa, 307; *Roberts* v. *Cobb,* 103 N. Y. 600.

When several persons subscribe for a common object or to a cause in which they have a common interest, the promises of the others constitute a consideration for the promise of each. *Troy Academy* v. *Nelson, supra; Watkins* v. *Eames, supra; Burlington University* v. *Barritt,* 22 Iowa, 60; *Petty* v. *Church of Christ,* 95 Ind. 278; *King* v. *Carroll,* 129 Iowa, 364; *Waters* v. *Union Trust Co.,* 129 Mich. 640; *Brokaw* v. *McElroy,* 143 N. W. 1087.

If, on the faith of a subscription and before its withdrawal, the promisee performs acts, and spends money and incurs liabilities in the furtherance of the enterprise that the promisor intended to promote, a sufficient consideration is supplied. *University of Vermont* v. *Buell,* 2 Vt. 48; *Troy Academy* v. *Nelson, supra; State Treasurer* v. *Cross,* 9 Vt. 289; *Grand Isle* v. *Kinney,* 70 Vt. 381; *Farmington Academy* v. *Allen,* 14 Mass. 172; *Keuka College* v. *Ray,* 167 N. Y. 96; *Hodges* v. *O'Brien,* 113 Wis. 97; *Beatty* v. *Western College,* 177 Ill. 280; *Maine Central Institute* v. *Haskell,* 73 Me. 140; *Berkeley Divinity School* v. *Jarvis,* 32 Conn. 412.

TAYLOR, J.    This is an appeal from the allowance by commissioners of a claim against the estate of the late Theodore N Vail.    The trial was by the court and the plaintiff had judgment on the facts found.    The defendant argues on review certain exceptions to the judgment, to the admission of evidence, and to the findings of fact.

The claim in litigation is based on a subscription agreement signed by Mr. Vail and others as contributors to a fund being raised for the use and benefit of the Boys' and Girls' Department of the plaintiff hereinafter referred to as the League, of which

the name was later changed to the Junior Achievement Bureau.
Mr. Vail had been identified with the plaintiff corporation, was
its vice-president and was particularly interested in the work
carried on in this department, being chairman of the committee
having charge thereof. In conjunction with the president and
general manager of the League, he had devised plans for work
with the boys and girls in the ten Eastern States. In May,
1919, he submitted the plans to a Mr. Benson, who was engaged
in boys' and girls' work under the government and solicited him
to give up his position in Washington to act as director of the
proposed department of the League. The negotiations resulted
in a meeting in Springfield, Mass., on September 5, 1919, of per-
sons who had become interested in the movement. Mr. Vail pre-
sided over and addressed the meeting. At his request Mr.
Benson submitted a program of proposed work covering a period
of five years and requiring $50,000 for the first year. As a re-
sult of this conference the agreement on which the plaintiff's
claim is based was prepared and executed. We quote so much
of it as is material to the review:

"Agreement made this fifth day of September, 1919, be-
tween the Eastern States Agricultural and Industrial League, a
corportion (hereinafter referred to as the League), party of the
first part, and those persons, firms and corporations who shall, by
subscribing to this instrument or to duplicates thereof, become
parties hereto (hereinafter referred to as the subscribers), parties
of the second part. This agreement witnesseth: That the sub-
scribers, each for himself and not for any other subscriber, on
condition that the sums paid hereunder shall be used by and for
the benefit of the Boys' and Girls' Department of said League,
hereby agree with the other subscribers that they will contribute
and pay to the League annually during the calendar years 1920,
1921, 1922, 1923 and 1924 a sum not exceeding the amount set
opposite their respective names. It is understood that the agree-
ment entered into hereunder by the subscribers shall be subject
to the following provisions, conditions and limitations, to wit:
1. The liability of the subscribers shall be several and not
joint * * * and his obligation to pay shall not be fixed and bind-
ing until *bona fide* subscriptions to the amount of fifty thousand
dollars annual payments shall have been made.

2.   The League shall not demand of the subscribers nor shall the said subscribers to this contract be required to pay a total aggregate sum of more than fifty thousand dollars the first calendar year, and thereafter annually only the proportionate amount which the appropriation for said Boys' and Girls' Department of said corporation for the particular year shall bear to the aggregate subscriptions hereto * * *.

3.   The amount agreed or required annually to be paid by each subscriber shall be due and payable to the Treasurer of the League at its office in Springfield, Massachusetts, in five equal payments each upon a written demand therefor made by the Treasurer at least ten days prior to the date specified for such payment.   In consideration of the foregoing, the League agrees with the subscribers and each of them that all money received by it, in accordance with the provisions of this agreement, shall be used in the Boys' and Girls' Department of the League, and shall be applied to the support, maintenance and extension of the work carried on in the Boys' and Girls' Department.   This agreement shall inure to the benefit of and be binding upon the heirs, executors, administrators and successors of the prospective parties hereto.''

The agreement was executed by the plaintiff and by Mr. Vail and fifteen other subscribers who were present at the meeting. The sums there pledged aggregated $44,000, of which Mr. Vail subscribed $15,000.   The writing bears one seal affixed opposite Mr. Vail's signature.   It recites that the subscribers have adopted one seal as a common seal.   Subsequent to September 5, 1919, and prior to the date of Mr. Vail's death which occurred April 16, 1920, nine subscriptions amounting to $3,100 were obtained to the original agreement.   During the same time thirteen additional subscriptions aggregating $2,700 were made by individual agreements which, except as to date, were, in the language of the finding, ''exact counterparts'' of the original agreement.   None of the foregoing subscriptions are questioned except that of McCullum Hoisery Co. of $100.   The defendant claims a shortage of $300 in the amount of subscriptions necessary to give the contract force as against Mr. Vail or his estate. Whether there was such a shortage depends upon the effect to be given other subscriptions.   In response to a letter written by Mr. Moses, the plaintiff's president, Simonds Manufacturing Co. re-

sponded October 14, 1919, by letter enclosing a check for $1,000 in lieu of an annual subscription of $200, stating that it was all paid at once, as they did not care to have the matter come up each year. Likewise, under date of October 30, 1919, Harry S. Kelsey addressed a letter to Mr. Moses as president of the Strathmore Paper Co. in which he directed Mr. Moses to "record my yearly pledge of $500 for a term of 5 years toward the Boy and Girl Extension Work." These subscriptions are challenged as not answering the requirements of *bona fide* subscriptions under the original agreement, and that of the Simonds Mfg. Co. ( as also the subscription of the McCullum Hosiery Co. referred to above) on the further ground that the power of the company to make such a donation and the authority of the person assuming to act for it, had not been shown. Subsequent to Mr. Vail's death subscriptions aggregating $5,850 were obtained to the original agreement; and two subscriptions of $500 each, one June 12, 1920, and the other July 28, 1920, were made by individual agreements in the same form as the original agreement. It is claimed that none of the subscriptions secured after Mr. Vail's death can be relied upon to charge his estate; that Mr. Vail was not bound under the contract in his lifetime; and that until *bona fide* subscriptions to the amount required had been made the agreement was revocable and as to Mr. Vail was revoked by his death.

Subsequent to September 5, 1919, Mr. Vail continued to act as chairman of the Boys' and Girls' committee and the activities of the department were carried on to the time of his death under his immediate supervision. He told Mr. Benson he had been informed by the president of the League that the amount specified in the subscription agreement had been provided and prevailed upon him to give up his position in Washington and to take the position of director of the Boys' and Girls' Department. Mr. Benson entered the employ of the plaintiff as of December 11, 1919, under a contract for five years. In conjunction with Mr. Benson and with the president and manager of the League Mr. Vail prepared and approved the financial budget for the year 1920, involving an expenditure of $50,000. He called a meeting of the contributors at which he outlined the program of the work of the Department and after it was agreed upon personally participated in incurring the expenses thereof. Re-

lying upon the subscriptions, including that of Mr. Vail, the plaintiff leased offices; purchased furniture and equipment, hired clerks and permanent field workers, and incurred large expenditures for the purposes of the Boys' and Girls' Department.

The proportionate share of the expenses of the Department for the year 1920 on account of Mr. Vail's subscription was $11,400. He had paid $4,250 as called for before his death. In December, 1920, his executors paid the balance of the first year's assessments with the understanding that it was received without prejudice to, or waiver of, the rights and liabilities of the defendant under the contract or the claims now relied upon. The plaintiff expended and incurred obligations in connection with the Boys' and Girls' Department amounting to $69,161.50 during the year 1921, a sum in excess of the total annual subscriptions, including that of Mr. Vail. Demand was made on the defendant in accordance with the provisions of the subscription agreement. At the time of the hearing in February, 1922, no other assessments had been called for. The court found the plaintiff entitled to recover up to that time, $15,000, for which with accrued interest it had judgment. It found further that the defendant would be liable under the subscription agreement to the proportionate share of the expenditures of the Boys' and Girls' Department of the League for the years 1922, 1923, and 1924, not to exceed $15,000 in any one year. Accordingly it was ordered that the case be retained "with the court" for subsequent proceedings, from time to time, to determine as therein provided the exact amount of the defendant's liability as it should become fixed and determined; and the representatives of the estate were ordered to retain not less than $50,000 to meet such subsequent assessments.

[1] The first point briefed raises the question whether the plaintiff is a proper party to the action. It is claimed that there is no promise in the contract to pay the plaintiff but that the promise sought to be enforced is solely to the other subscribers, made for the benefit, not of the League, but of the Boys' and Girls' Department thereof; and that the plaintiff cannot maintain the suit on the theory that the promise made to others is for its benefit, for the instrument is under seal. The defendant's argument is highly technical and overlooks the fact that such agreements for public or quasi public enterprises are favored

in law, and as a matter of public policy are construed, if they reasonably may be, to support a recovery. Doubtful questions are to be resolved against subscribers who seek to evade promised contributions. *Merchants' Bldg. Mup. Co.* v. *Chicago Exch. Bldg. Co.,* 210 Ill. 26, 71 N. E. 22; *Illinois M. E. Church* v. *Garvey,* 53 Ill. 401, 5 A. R. 51; 25 R. C. L. 1398; note 48 L. R. A. (N. S.) 784; *Brokaw* v. *McElroy,* 162 Iowa, 288, 50 L. R. A. (N. S.) 835; *Presbyterian Board, etc.* v. *Smith,* 209 Pa. 361, 58 Atl. 689; and *Ex parte South,* 205 Ala. 31, 88 So. 221 are to the same effect; and so are our own cases. In *Methodist Episcopal Society* v. *Lake,* 51 Vt. 353, it was contended, as here, that the agreement was among the subscribers and not with the plaintiff. Although the promise was not in terms to pay any particular person or association, it was held permissible to presume that the parties understood the money was to be paid to the Society. The Court expressed gratification "in being able to find satisfactory reasons for sustaining the judgment, and thus compelling the defendant to discharge the obligation which the record shows he entered into."

[2-5]   The contract is to be construed in accordance with the purpose of the parties making it. When the subscription agreement is read as a whole and in the light of surrounding circumstances there would seem to be no doubt that a promise to the plaintiff was intended. The League is expressly made a party to the contract. Each subscriber agrees that he will "contribute and pay to the League" a certain sum annually. The agreement on the part of the subscribers is subject to the condition, among others, that the League shall not demand nor the subscribers be required to pay in the aggregate more than a specified sum annually. This necessarily implies an obligation enforceable by the League. Finally, it is stipulated that the annual contribution of each subscriber shall be due and payable to the treasurer of the League in installments upon his demand. If additional evidence of the intention of the parties were required, at least so far as Mr. Vail was concerned, it is found in his relations to the League and the work of the department for the benefit of which the subscriptions were being made. We are unable to agree that the construction contended for by the defendant should be adopted, but hold that the claim is enforceable by the plaintiff as payee. However, if it were held other-

wise, the defendant could not prevail on this branch of the case. If the plaintiff was not named in the subscription contract as payee, the subsequent performance of the agreement on its part in reliance on the subscriptions would be sufficient to give it standing to enforce the claim. Such is the well established rule. *Owenby* v. *Georgia Baptist Assembly,* 137 Ga. 698, Ann. Cas. 1913B, 238. A note to this case at p. 241 collects the cases, including *Sherwin* v. *Fletcher,* 168 Mass. 413, 47 N. E. 197. While in terms the subscribers agree to pay their subscriptions to the treasurer of the League the contract was in law with the plaintiff and enforceable in its name. *Town of Grand Isle* v. *Kinney,* 70 Vt. 381, 384.

[6] Numerous exceptions have for their basis the claim already adverted to that Mr. Vail's subscription was revocable up to the time of his death and that it lapsed at his decease, or was in law revoked thereby. It is well settled that, in the absence of any consideration for the undertaking, a subscription for a benevolent or charitable purpose such as that involved in the instant case is considered only as a continuing offer to make a gift; that while standing thus it may be withdrawn or revoked and is unenforceable; and that, if the subscriber dies while the offer is still revocable, it is deemed to be thereby revoked, and cannot afterwards be enforced against his estate. The want of a legal consideration to support the obligation gives this character to the promise. See *Montpelier Seminary* v. *Smith,* 69 Vt. 382. The continuance of the offer contained in such a subscription is said to be in the nature of its constant repetition, which necessarily requires someone living capable of making such a repetition. *Pratt* v. *Baptist Soc.,* 93 Ill. 475, 34 A. R. 187. Many of the pertinent cases are collected in a note to *Young Men's Christian Asso.* v. *Estill,* 48 L. R. A. (N. S.) 783, at pages 785 and 801.

[7, 8] But given an adequate consideration to support the promise a different situation is presented. Then the subscription has the essential characteristics of a contract and is subject to the rules applicable thereto. If there is a legal consideration for the promise when made, it is a binding obligation from its inception. If the subscription is unenforceable as being without consideration originally, but before its withdrawal the promisee performs acts, expends money, or incurs enforceable liabilities

on the faith of the subscription in furtherance of the enterprise intended to be promoted, the right of revocation is lost and the subscription is thereby rendered valid, binding, and enforceable, subject, of course, to such conditions as the contract imposes. An examination of the cases shows that this is the generally accepted theory with regard to subscriptions for benevolent or charitable purposes. Many of them are reviewed in the note cited above at pages 787-801.

There is some disagreement in the decisions as to what meets the requirement of a legal consideration. Some courts hold that it is supplied by mutual subscriptions, upon the theory that where several persons subscribe for a common object, or to a cause in which they have a common interest, the promise of the others constitutes a consideration for the promise of each. Note 48 L. R. A. (N. S.) 798. While the reason for allowing a recovery upon this ground is usually stated in terms of consideration, some decisions including our own sustain a recovery on the theory of an estoppel. See *Troy Con. Academy* v. *Nelson,* 24 Vt. 189. Again, it is held by some courts that the expenditure of time, labor and money in securing additional subscriptions, the securing of which is made a condition of the subscription in question, constitutes a sufficient consideration to support a promise. Our case last cited adopts this rule. It was there held that where a subscription to a charitable fund is conditioned upon the raising of a certain total amount there is an implied request that the promisee shall endeavor to raise that amount, and if he does so endeavor and succeeds, a sufficient consideration for the subscription is furnished. Other cases applying the same principle are *Kentucky Baptist Ed. Soc.* v. *Carter,* 72 Ill. 247; *University of Des Moines* v. *Livingston,* 57 Iowa, 307, 42 A. R. 42; *University of Chicago* v. *Emmert,* 108 Iowa, 500, 79 N. W. 285; *Keuka College* v. *Ray,* 167 N. Y. 96, 90 N. E. 325; *Converse's Estate,* 240 Pa. 458, 87 Atl. 849; *Robinson* v. *Nutt,* 185 Mass. 345, 70 N. E. 198. Finally, such courts as hold that no consideration is to be found in the mutual subscriptions themselves, or in the effort made to procure them, are in full accord with the general proposition, that an acceptance of the proposal by the promisee and some act in reliance upon it, such as entering upon the performance of obligations incurred under the agreement, expending money or incurring legal liability in

furtherance of the enterprise, supplies the necessary consideration or operates as an estoppel, and that the subscription is thereby rendered irrevocable, binding and enforceable. Mr. Williston in his work on contracts takes the position that the enforcement of charitable subscriptions is only to be supported if a promissory estoppel is to be regarded as a sufficient substitute for consideration. Williston on Contracts, § 116. Among the cases supporting this view are *Beatty* v. *Western College,* 177 Ill. 280, 52 N. E. 432; *Simpson College* v. *Tuttle,* 71 Iowa, 596, 32 N. W. 74; and *School District of Kansas City* v. *Sheidley,* 138 Mo. 672, 60 A. S. R. 576.

Having in mind these divergent views, the following illustrative cases will serve to indicate sufficiently the trend of the decisions where benevolent or charitable subscriptions are involved: "The promise stands as a mere offer and may, by necessary consequence, be revoked at any time before it is acted upon. It is the expenditure of money or incurring legal liability on the faith of the promise which gives the right of action." *Pratt* v. *Trustees Baptist Soc.,* 93 Ill. 475, 34 A. R. 187. The Supreme Judicial Court of Massachusetts has held that mere gratuitous or benevolent proposals are lacking in consideration and so not enforceable; but that an acceptance of the proposal by the promisee and some substantial act in reliance upon it, such as obtaining additional subscriptions to make up the amount required and entering upon the performance of the obligations incurred under the agreement, furnishes a sufficient consideration to support the contract. *Robinson* v. *Nutt,* 185 Mass. 345, 70 N. E. 198. "Though a subscription is originally voluntary, or in the nature of a mere open proposition, yet where it has been accepted and acted on by the party authorized so to do before any attempt is made to retract, the subscriber loses his right to revoke." *Athol Music Hall Co.* v. *Carey,* 116 Mass. 471. "Persons making gratuitous subscriptions are entitled to withdraw before the party in interest has in some manner accepted the proposition or acted upon it." *American Life Ins. Co.* v. *Melcher,* 132 Iowa, 324, 109 N. W. 805. "A mutual written subscription for a charitable purpose supported by a good consideration—the promise of others—cannot be withdrawn at the will of the subscriber." *Wilmington* v. *Benton* (Ga. App.), 103 S. E. 497. "When a subscription to a church building fund is supported

by the consideration of other subscriptions made in reliance thereon and is irrevocable by the conditional subscriber at the time of his death, his death does not operate as a revocation." *Waters* v. *Union Trust Co.*, 129 Mich. 640, 89 N. W. 687. "A gratuitous promise will be converted into a valid and enforceable contract if expense is incurred or liability is created in furtherance of the enterprise the donor intended to promote, and in reliance upon the promise. They will be taken to have been incurred or created at his instance or request and his executors will be estopped to plead want of consideration." *School District of Kansas City* v. *Sheidley, supra.* "Where the promisee has expended money or incurred liabilities on the faith of a subscription, or it is within the contemplation of the subscriber that his contribution will be used to induce others to subscribe, and additional subscriptions are made by reason of such inducement, even in part, the substantial elements of an estoppel are present." *Furman University* v. *Walker* (S. C.), 117 S. E. 356. In *University of Penn.* v. *Cadwalader* (Pa.), 121 Atl. 314, the trustees of the University, relying upon the subscriptions of the decedent and others, incurred obligations in carrying out the purposes for which the funds were intended and had expended a part of the total amount subscribed. It was held that this action on their part constituted a consideration which made the gift irrevocable and binding, not only upon the donors, but upon their representatives after their death—that the acceptance of the gift and the incurring of obligations in reliance upon it created a valid, binding contract, and the subscriptions became irrevocable thereafter. In *Baptist Church* v. *Cornwell*, 117 N. Y. 601, 23 N. E. 177, it is said that subsequent expenditures made in reliance upon the subscriptions may afford consideration so that the subscription is not revoked by the death of the subscriber where the expenditure can be said to have proceeded with the knowledge and assent of the subscribers.

Our own cases are to the same effect. *University of Vermont* v. *Buell*, 2 Vt. 48, was an action upon a subscription agreement signed by the defendant and others in which the subscribers promised to pay certain specified sums for the purpose of rebuilding the college buildings which had been destroyed by fire. The subscriptions were made upon the condition that they were not to be binding unless a certain sum should be subscribed, but the

amount having been raised the subscriptions were discharged from the condition. Among the defenses relied upon was the claim that the agreement was without consideration. Sufficient consideration to support the promise was found in the fact that the plaintiff accepted the proffered assistance and relying thereon proceeded in the erection of the buildings and expending its own funds to accomplish that purpose. It was held that, although the promise lacked mutuality at the outset, the acceptance of the subscription, the appointment of a committee to superintend the undertaking and the actual commencement of the work, in good faith, with a view to its ultimate completion "was a consummation of the consideration" and bound the defendant to a performance on his part. The question of revocation was not in the case, but it is evident from what was decided that the relations of the parties were regarded as having changed when the offer was accepted and acted upon by the defendant. The Buell case is cited in *State Treasurer* v. *Cross,* 9 Vt. 289, as authority for a holding that a subscription to a fund being raised by the citizens of Montpelier to secure the erection of a new capitol building was not void for want of consideration, when the act authorizing the building was conditioned upon a voluntary contribution for that purpose by the inhabitants of Montpelier and the building had been erected as contemplated. In *Troy Con. Academy* v. *Nelson, supra,* it was held that a binding obligation was created not only for the reasons already stated but that a consideration for the agreement was also to be found in the obligation imposed upon and assumed by the Academy, the assumed liability furnishing a consideration for the promise of the subscribers. These cases are referred to with approval in *Montpelier Seminary* v. *Smith,* 69 Vt. 382, 387, and *Town of Grand Isle* v. *Kinney,* 70 Vt. 381, 388. In the former it is said that a legal consideration may consist in loss, damage or inconvenience sustained by the party to whom the promise was made; and in the latter, that the detriment to the plaintiff induced by the agreement of the defendants was ample consideration for their agreement to pay the sum stipulated.

[9] It is urged by the defendant that by its express terms the subscription agreement could have no binding force until the specified amount of subscriptions had been procured and this is relied upon as distinguishing the case from those cited by the

plaintiff. The argument is based upon the erroneous assumption that the promise to pay was on a contingency made with other future subscribers and not with the plaintiff. Proceeding upon this theory it is argued, in effect, that there could be no contract between Mr. Vail and those who became subscribers after his death; that he could not be bound unless there was a contract with all the other subscribers necessary to meet the condition; that as to one who had not yet signed, Mr. Vail's subscription would be a mere offer which could only be accepted by becoming a subscriber; and that signing after his death would be an attempt to accept a dead man's offer, which could not be done. As already appears, there is no foundation for the attempted distinction. The condition that the subscribers' "obligation to pay" shall not be fixed and binding until subscriptions to a certain amount shall have been made is not a matter of contract between the subscribers, but a limitation or qualification of each subscribers liability to the plaintiff. It does not affect the character of the agreement but imposes a condition respecting its enforceability, 2 Williston on Con., § 666. In this respect it is no different than the ordinary conditional subscription agreement found in many of the decisions. We have examined the cases cited by the defendant to the proposition that the conditional amount not having been raised before Mr. Vail's death the estate would not be liable on the subscription and find them in substantial accord with the views herein expressed.

It must be held in the circumstances shown that before Mr. Vail's death his subscription had ceased to be a revocable offer and had become at least an obligation enforceable when the condition respecting the total amount of the subscriptions was complied with. He had lost the right of revocation, if, indeed, it ever existed. We have no occasion to consider the effect of the seal on the question of consideration, nor whether the rule as to mutual subscriptions should be applied. It fairly appears that the plaintiff accepted the subscriptions, conducted a compaign to secure the required amount at Mr. Vail's implied request and with his knowledge and approval incurred expense and obligations in furtherance of the plan of which he was the principal promoter, relying upon the subscriptions to finance the undertaking. In such circumstances tested by well established principles, Mr. Vail's subscription became in his lifetime a valid and irre-

vocable obligation, even if the condition under which the sub-
scription was to become due and payable had not then been met.
This is so whether the action of the plaintiff is deemed to have
supplied a consideration for the promise, as held in some cases,
or to afford the basis of an estoppel as held in others.

[10-12]   This conclusion removes any possible doubt as to
the merits of the case and simplifies the consideration of the
exceptions.   It is evident from what has already been said that
Mr. Vail's death did not revoke his subscription.   The rule that
the death of a subscriber to a benevolent or charitable purpose
works a revocation of the subscription applies only to cases
where the decedent himself might have revoked the promise at
the time of his death.   *Waters.* v. *Union Trust Co., supra; Albert
Lea College* v. *Brown,* 88 Minn. 524, 60 L. R. A. 870; *Presbyterian
Bd. of Foreign Missions* v. *Smith,* 209 Pa. 361, 58 Atl. 689.   Note
48 L. R. A. (N. S.) 801, 802; 37 Cyc. 492, 493.   Nor is the result
affected by the fact, if present, that the entire amount was not
subscribed before Mr Vail's death.   The time within which the
necessary subscriptions could be secured to meet the condition
was not stipulated and, by operation of law, was limited only to
a reasonable time.   It cannot be held, as the defendant argues,
that it was impliedly limited to January 1, 1920.   As Mr. Vail's
death did not revoke the subscription, the League would still
have a reasonable time within which to complete the raising of
the fund.   During such time his estate would be bound to the
same extent that he would have been bound if living.   *Converse's
Estate,* 240 Pa. 458, 87 Atl. 849; *School Dist.* v. *Shiedley,* 138
Mo. 672, 60 A. S. R. 576; *Waters* v. *Union Trust Co.,* 129 Mich.
640, 89 N. W. 687.

[13-17]   Assuming that it is necessary to take into account
subscriptions procured after Mr. Vail's death, it sufficiently ap-
pears that the condition was met within a reasonable time.   Un-
questioned subscriptions aggregating $5,850 were thereafter se-
cured to the original agreement.   The exact time within which
they were obtained is not stated in the findings.   The individual
subscription of $500 secured on June 12, 1920, alone would be
sufficient to meet the condition as to amount.   While it is not
expressly found that the condition was met within a reasonable
time, the judgment is not objected to on this ground.   But we
may presume in support of the judgment that the trial court

inferred the fact, as such an inference is warranted by the facts found. The case is not subject to the provisions of G. L. 2259, relating to the facts to be found by the county court before a bill of exceptions is allowed ''when a question of fact that entitled either party to trial thereof by jury is tried by the court.'' In cases within this statute it has been held that the review is necessarily confined to the facts reduced to writing and filed by the court below, unaided by any inferences. *Grapes* v. *Rocque,* 96 Vt. 286, 119 Atl. 420; *Powell* v. *Merrill,* 92 Vt. 124, 131, 103 Atl. 259. But the restriction is limited to cases in which a party is *entitled* to a trial by jury. ''Entitled'' signifies a claim of right—the right to demand or receive. Webster's New Int. Dic.; 20 C. J. 1272; *Peoples' Trust Co.* v. *Smith,* 30 N. Y. S. 342. In ordinary probate appeals, except where the allowance or disallowance of a will is the issue, there is no such right. G. L. 3466; *In re Peck's Estate,* 87 Vt. 194, 88 Atl. 568; *In re Smith's Will,* 88 Vt. 259, 273, 92 Atl. 223.

[18]    The defendant briefs exceptions to the findings numbered from (a) to (z) inclusive taken upon four separate grounds as to each, (1) that there was no supporting evidence; (2) that it was contrary to the evidence; (3) that it was not supported by the other findings; (4) that it was contrary to the other findings. Seven exceptions to the admission of evidence are also briefed. It is enough to say that they do not show reversible error. For the most part they relate to questions that become immaterial in view of the foregoing holdings or are otehwise sufficiently disposed of in what has already been said. We have occasion to refer only to such questions as require particular notice. The objection to the admission of the individual subscription papers (Exhibits 2 to 17) on the ground that they are not exact counterparts of the original subscription agreement signed by Mr. Vail, and the exception to the finding that, except as to date, they were exact counterparts thereof, are without substantial basis. The condition that the ''obligation to pay'' should only become binding when ''*bona fide* subscriptions'' to the stipulated amount had been made required no such formality. The very most that the defendant would be justified in claiming is that only the subscribers to the original agreement and duplicates thereof became parties thereto. But it would not follow that *bona fide* subscriptions of uniform tenor and for a common

33

object could not be taken into account in determining whether the condition had been met. Moreover, in all material respects they were duplicates of the original agreement. The only difference relied upon is that they bear different dates, that the abbreviation, "Inc,", is appended to the name of the League on the individual subscriptions and not on the original agreement, and that all except the original agreement have the corporate seal affixed.

[19-21] One exception was "to the findings in finding (21)." The paragraph of the findings so numbered recites in detail the acts of the plaintiff done "relying upon the subscription of Mr. Vail and others." It is now urged that there was no evidence tending to show that any obligations were incurred in reliance upon the subscriptions. The exception was plainly too general to make the point relied upon available. It covered numerous findings which it is not now claimed were unsupported by evidence and did not point out the matter now complained of. To make an exception available it must reasonably indicate the fault, and not leave the court in ignorance of the precise ground on which it is predicated. *Morgan* v. *Gould*, 96 Vt. 275, 279, 119 Atl. 517. But it was unnecessary that there should be direct evidence to support the finding of reliance. It is sufficient that the circumstances supported such an inference.

[22] Plaintiff's Exhibit 21 is the financial budget of the Junior Achievement Bureau of the League for the year 1920. This exhibit and the testimony that Mr. Vail paid $4,250 in two installments towards his subscription in 1920 were excepted to as incompetent, immaterial, and irrelevant, and on the particular ground, in substance, that no contract on the part of Mr. Vail had been established. These exceptions are briefed as follows: "Exhibit 21 was not admissible for reasons already stated, no agreement had been established. The same applies to testimony of Mr. Shirley about payments by Mr. Vail." Our attention is not called to any portion of the brief where the question is discussed. It must be held that the points are not adequately briefed. See *McAllister* v. *Benjamin*, 96 Vt. 475, 498, 121 Atl. 263.

Because of the conclusion reached on the main question we find it unnecessary to consider the claim advanced by the plaintiff that Mr. Vail had, in his lifetime, waived the condition re-

specting the amount to be secured before he would be bound to pay his subscription. The circumstances are convincing that Mr. Vail regarded the obligation as binding upon him. In view of his connection with the enterprise throughout, it would be unjust to him as a business man, and the generous benefactor that he is known to have been, to think that he entertained the suspicion even that he, or his estate upon which he had expressly enjoined the fulfillment of his promise, would be at liberty to withdraw his benefaction with the attendant embarrassment to the League. It is a source of gratification that a result can be reached on legal grounds that effectuates his manifest intention.

[23] The defendant excepted to the "finding" that the case should be kept on the docket "with the court" for subsequent proceedings, from time to time, to determine the exact amount of the liability of the defendant as it should become fixed under the provisions of the subscription agreement. The only claim in the brief is that the "finding" was erroneous, as sufficient subscriptions had not been obtained before Mr. Vail's death. The exception cannot be sustained, but it remains to be considered whether the orders of the county court respecting subsequent installments of the subscription should be affirmed and the cause remanded to that court for further proceedings, or such orders vacated and the cause remanded to the probate court to be there proceeded with. The defendant's counsel suggested in oral argument that if the result was an affirmance of the judgment, the cause should be certified to the probate court with directions as to further proceedings. While G. L. 3453 gives the county court concurrent law and equity jurisdiction in causes appealed from the probate court and empowers the presiding judge to make such orders and decrees therein as a chancellor might make if the cause were pending in the court of chancery, it would seem that it was not intended that the county court should retain the cause for such further proceedings as are contemplated in this order. G. L. 3470 provides that the final decision and judgment in causes appealed shall be certified to the probate court by the supreme or county court, and that "the same proceedings shall be had in the probate court as though such decision had been made in such court." Thus it would seem that the statute contemplates the handling of such a situation as this case presents in the probate court upon the remand. Chap-

ter 154 of the General Laws, relating to contingent claims, provides ample machinery for proving subsequent claims against Mr. Vail's estate growing out of the subscription agreement. The remedy through the probate court is the more expeditious if not the only remedy. Accordingly we are constrained to follow the defendant's suggestion.

*Judgment affirmed except as to the orders relating to the unsecured subscriptions, which are vacated pro forma. Let the cause be certified to the probate court for such further proceedings as the plaintiff is entitled to in connection with installments of the testator's subscription that are not included in the judgment. Let the plaintiff recover its costs in this Court.*