ALBERT B. BOMHOWER ET UX. *v.* ROCHIE E. SMITH.

February Term, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 2, 1939.

*Raymond Trainor, Henry .F. Black* and *Alfred Guarino* for the defendant.

*Roland E. Stevens* for the plaintiff.

MOULTON, C. J.   This is an action in tort brought under the provisions of P. L. 8540 to recover treble damages for the cutting of timber.   The trial was without a jury, a finding of facts was made and filed, and judgment was rendered for the plaintiffs to recover single damages only, since the court found that the defendant had good reason to believe that the land upon which the cutting was done belonged to him.   The defendant excepted.

The finding of facts discloses the following: Harry B. Elliott owned two adjoining farms, known as the Gillette and the Buell farms.   The former lies to the south and the latter to the north. He acquired title to the Gillette farm from Angie Burns Gillette and others, by warranty deed dated September 25, 1929, the material part of the description being ''bounded northerly by the Buell farm, so-called, owned by Emma L. and Mary H. Dana, said dividing line being more particularly given in their deed recently given or to be given.''   The Danas conveyed the Buell farm to Elliott on December 24, 1929, the premises being described as bounded ''southerly by the Edward A. Gillette farm

now owned by said Elliott." On July 21, 1931, Elliott conveyed the Gillette farm to Edgar J. and Ida Carpenter, describing it (with an exception here not material) "the same and all the same land and premises which were conveyed to me by Angie Burns Gillette and Helen Wright and Seaver D. Wright, by their deed dated September 25, 1929," referring to the record thereof for more particular description, "being the Edward A. Gillette farm, so-called." On August 4, 1931, Elliott conveyed the Buell farm to the plaintiffs, Albert B. and Gertrude Bomhower, describing the southerly boundary by metes and bounds, but the line thus drawn did not coincide with the original southerly boundary but was somewhat northerly of it.

The Carpenters deeded the Gillette farm back to Elliott on April 8, 1932, as "the same and all the same land and premises which were conveyed to the said Harry B. Elliott by the warranty deed of Angie Burns Gillette and Helen Wright and Seaver D. Wright, dated September 25, 1929 * * * * formerly known as the Edward J. Gillette farm,". with reference to the record in aid of the description. On May 10, 1932, Elliott conveyed the Gillette farm to Charles B. and Eva F. May, the description being the same as that contained in the deed from the Carpenters to him. The Mays conveyed the Gillette farm to George A. and Ada M. Chamberlin on October 3, 1933, and the deed contained the following: "The northerly line between the buildings and the premises hereby conveyed and the buildings and lot now owned by Albert B. Bomhower and wife is more particularly described in the warranty deed of Harry B. Elliott to Albert B. and Gertrude Bomhower dated August 4, 1931 [referring to the record thereof] and said northerly line is also the southerly line of the said Bomhower house and house lot." George A. Chamberlin conveyed to Rochie E. Smith, the defendant, on May 4, 1936, describing the premises by reference to the deeds of Elliott to the Mays of May 10, 1932, and of the Mays to the Chamberlins of October 3, 1933, and to the records thereof in aid of the description.

On September 17, 1937, Elliott executed a quitclaim deed to the Bomhowers covering the land lying southerly of the line described by metes and bounds in his former deed to them, and northerly of the line between the Buell and Gillette farms "as formerly accepted and existing for a long period of time."

It is upon this strip of land that the timber was cut. The defendant claims that, not having been conveyed to the plaintiffs by the deed to them from Elliott of August 4, 1931, it became, after the deed of the Carpenters to Elliott of April 8, 1932, a part of the Gillette farm, and so passed to the defendant by virtue of the various deeds hereinbefore mentioned. He places particular stress upon the deed from the Mays to the Chamberlins of October 3, 1933, which as we have seen, was referred to in the deed of the Chamberlins to him.

The defendant has briefed three exceptions to the findings. The first two may be considered together. They are (1) to the statement that the deed from the Mays to the Chamberlins conveyed only the original Gillette farm and (2) to the statement that neither the defendant nor any of his predecessors in title to the Gillette farm have or have had title to the land in dispute. ■■ Although in form findings of fact these statements are in reality conclusions of law, but if they are supported by facts elsewhere appearing in the findings, no error can be predicated upon them. *Travelers Ins. Co.* v. *Gebo,* 106 Vt. 155, 164, 170 Atl. 917. But the location of the true divisional line was a question of fact to be determined on the evidence. *Vermont Marble Co.* v. *Eastman,* 91 Vt. 425, 446, 101 Atl. 151.

■■ It does not appear to be denied that the line by metes and bounds was not the original boundary between the two farms, but it is argued that it became the boundary by the act of Elliott, who, being the common owner, could divide the two properties as he wished. The answer to this is, that at the time of the conveyance to the plaintiffs he was not the common owner, having previously parted with the title to the Gillette farm, and, although he subsequently acquired it again, there is nothing to show that he made the strip of land in dispute a part of the property that he sold to the Mays, and described as "the same and all the same land and premises which were conveyed to me by" Gillette and others "by their deed dated September 25, 1929 * * * * being the Edward J. Gillette farm, so-called." That this deed covered only the original Gillette farm is beyond question. The fact that the deed from Gillette and others to Elliott described the property as "bounded northerly by the Buell farm" and referred to a dividing line to be more particularly given in the deed of the Buell farm does not help the

defendant, because the latter deed did nothing more than to describe the southerly line of that property as the northerly line of the Gillette farm, thus leaving the situation exactly as it was before. The property acquired by the Mays did not extend beyond this line, and, owning no land to the north of it, they could convey none to the Chamberlins. The title of the land in question remained in Elliot until it passed from him to the plaintiffs by virtue of the quitclaim deed of September 17, 1937. The conclusions drawn by the trial court are amply supported by the facts previously found, and no error appears.

The third exception is "generally to all the findings of fact, on the ground that said findings are based on evidence which should have been excluded by the Court, but which was produced by the plaintiff and admitted over the objections and exceptions of the defendant." This is plainly too general to be availing. It did not reasonably indicate to the trial court the particular findings or the alleged inadmissible evidence. For this reason, we do not give it consideration. *Eastern States, etc., League* v. *Vail,* 97 Vt. 495, 514, 124 Atl. 568, 38 A. L. R. 845; *Royal Bank* v. *Girard,* 100 Vt. 117, 119, 135 Atl. 497; *Bemis* v. *Aldrich,* 102 Vt. 277, 278, 148 Atl. 693.

*Judgment affirmed.*